# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Sedlacek*, 2013 IL App (5th) 120106

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TERRY J. SEDLACEK, Defendant-Appellee. |
| District & No. | Fifth District<br>Docket No. 5-12-0106 |
| Filed | March 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The judgment affirming defendant's motion for a summary determination of his fitness to stand trial and limiting the State's proposed examination to the issue of defendant's sanity at the time of his alleged offenses was upheld, but the portion of the trial court's order requiring that the examination be video-recorded pursuant to section 103-2.1 of the Code of Criminal Procedure was reversed, since the examination will be performed in a mental health facility, not a "place of detention," and the cause was remanded for a discharge hearing pursuant to section 104-25 of the Code. |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 09-CF-540; the Hon. Richard L. Tognarelli, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on
Appeal

Thomas D. Gibbons, State's Attorney, of Edwardsville (Patrick Delfino, Stephen E. Norris, and Jennifer Camden, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

John J. Rekowski, Public Defender, of Edwardsville (Ronald R. Slemer, Assistant Public Defender, of counsel), and Curtis L. Blood, of Collinsville, for appellee.

Panel

JUSTICE WEXSTTEN delivered the judgment of the court, with opinion.
Justices Welch and Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1    The State appeals the trial court's order entering summary judgment in favor of the defendant on the issue of his fitness to stand trial and granting the defendant's request that the State record and limit the scope of its proposed evaluation of the defendant's mental status. For the reasons that follow, we affirm in part and reverse in part.

¶ 2                                BACKGROUND

¶ 3    In March 2009, the defendant, Terry J. Sedlacek, was arrested and charged with two counts of aggravated battery (720 ILCS 5/12-4(b)(1) (West 2008)) and two counts of first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2008)). The record indicates that following his arrest, the defendant was transported to St. Louis University Hospital, where he received both medical and psychological treatment.

¶ 4    In July 2009, alleging that he suffered from schizophrenia, the defendant filed a motion to determine his fitness to stand trial pursuant to article 104 of the Code of Criminal Procedure of 1963 (article 104) (725 ILCS 5/art. 104 (West 2008)). The defendant's motion requested that the court appoint an expert to examine him (see 725 ILCS 5/104-11(b), 104-13(a) (West 2008)) and that a fitness hearing follow the filing of the expert's report (see 725 ILCS 5/104-15, 104-16 (West 2008)). In a discovery answer, the defendant also advised the State that he might raise the affirmative defense of insanity (720 ILCS 5/6-2 (West 2008)).

¶ 5    In September 2009, the trial court appointed Dr. Robert Heilbronner to examine the defendant to determine his fitness to stand trial. See 725 ILCS 5/104-13(a) (West 2008). In October 2009, Dr. Heilbronner submitted two reports to the trial court, and the court ordered that the reports be placed under seal. See 725 ILCS 5/104-19 (West 2008). At a subsequent fitness hearing, the parties stipulated that if called to testify, Heilbronner would opine that

to a reasonable degree of scientific certainty, the defendant suffers from schizophrenia and would have difficulties understanding and participating in the proceedings against him. The parties further stipulated that Heilbronner would testify that the defendant would be unable to assist his attorneys in the preparation of a defense and that it could not reliably be determined whether the defendant would attain fitness to stand trial within one year. On October 20, 2009, referencing the parties' stipulations, the trial court entered an order finding the defendant unfit to stand trial and remanding him to the custody of the Department of Human Services (DHS) for treatment. See 725 ILCS 5/104-16(d), 104-17(b) (West 2008).

¶ 6        In December 2009, DHS submitted a report and treatment plan to the trial court pursuant to article 104. See 725 ILCS 5/104-17(e) (West 2008). Noting, *inter alia*, that the defendant had been "[r]eceiving psychiatric treatment since age 17," the report advised that the defendant suffered from chronic schizophrenia. The report concluded, however, that the defendant would likely achieve fitness "within one year." In a January 2010 progress report (see 725 ILCS 5/104-18 (West 2008)), DHS opined that the defendant was still unfit to stand trial but "may be restored to fitness within a year as statutorily allowed."

¶ 7        In June 2010, DHS submitted two progress reports, one of which indicated that the defendant was fit to stand trial and one of which indicated he was not. In July 2010, referencing the conflicting June 2010 reports, the trial court entered an order stating that further proceedings would be stayed until it received a progress report indicating that the defendant had attained fitness.

¶ 8        On October 19, 2010, DHS submitted a progress report stating its opinion that "there [was] not a substantial probability that [the defendant would] attain fitness within a period of one year from the date of the original finding of unfitness." The report further noted that the defendant's "one[-]year term of being found unfit [had] expire[d] on October 20, 2010."

¶ 9        On December 9, 2010, the State filed a request for a status hearing, asking that the trial court set the matter for a "first hearing" pursuant to section 104-20(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-20(a) (West 2008)). On December 28, 2010, DHS submitted a progress report concluding, "[The defendant] remains unfit to stand trial and is unlikely to attain fitness within the statutory time period." The December 2010 progress report further indicated that pursuant to section 104-20, the defendant's cause should proceed to a discharge hearing. The record indicates that the trial court never held a "first hearing" as the State requested. It is undisputed that the defendant is still in DHS custody at its mental health facility in Alton.

¶ 10        In March 2011, DHS submitted a progress report advising that the defendant was still unfit to stand trial. The report further indicated that pursuant to section 104-20, the defendant's cause should proceed to a discharge hearing. DHS reports concluding that the defendant remained unfit to stand trial were subsequently filed in July, September, and December 2011. Noting that the defendant's "one[-]year term of being found unfit [had] expired on October 20, 2010," those reports also stated the obvious conclusion that "there [was] not a substantial probability that he [would] attain fitness within a period of one year from the date of the original finding of unfitness."

¶ 11        In April 2011, the State filed a motion requesting that the defendant be evaluated by its

retained expert, Dr. Mathew Markos, Cook County's director of forensic services. The motion stated that the evaluation would be "for the purpose of assessing the defendant's fitness to stand trial and assessing whether the defendant was not guilty by reason of insanity." In May 2011, at a hearing on the motion, defense counsel stated that he did not object to the State's proposed examination, but he asked that the trial court order that the exam be video-recorded pursuant to section 103-2.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-2.1 (West 2008)). The State objected, arguing that section 103-2.1 was inapplicable under the circumstances. Asserting, *inter alia*, that many mentally ill defendants are "minimally cooperative" with court-ordered psychological examinations in the first place, the State further argued that the presence of a camera or recording device might "intrude on the evaluation itself." Citing section 103-2.1, the trial court ultimately ordered that Markos's examination of the defendant be audio-recorded. The State subsequently filed a motion to reconsider, again maintaining that section 103-2.1 was inapplicable under the circumstances.

¶ 12        In November 2011, the State filed an amended motion asking the trial court to reconsider its order requiring that Markos's proposed examination be recorded pursuant to section 103-2.1. The State's motion asserted that Markos had advised that he would not examine the defendant if the examination had to be recorded, because "the presence or use of recording equipment [would] hinder his examination and prevent him from effectively examining the defendant."

¶ 13        In January 2012, the defendant filed an objection to the State's request that the trial court reconsider its section 103-2.1 ruling. The defendant also filed a motion asking the trial court for a summary determination regarding his fitness to stand trial. In his objection to the State's motion to reconsider, the defendant asserted that pursuant to section 103-2.1, Markos's proposed examination would be a "classic custodial interrogation." See *Miranda v. Arizona*, 384 U.S. 436 (1966). The defendant further contended that the State was not authorized to independently seek an opinion as to the defendant's fitness to stand trial and that Markos's proposed examination should thus be limited "to the sole issue of the defendant's sanity/insanity at the time of the offense[s]." The defendant accordingly asked the court to enter an order limiting the scope of the examination. Citing section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)), the defendant's motion for summary determination requested that the trial court enter an order finding that he was unfit to stand trial and would "not obtain fitness within one year." The motion asserted that "there was no genuine issue as to the facts."

¶ 14        The cause subsequently proceeded to a joint hearing on the State's amended motion to reconsider and the defendant's motion for summary determination. In support of its motion asking the trial court to reconsider its order requiring that Markos's proposed examination be recorded pursuant to section 103-2.1, the State argued, *inter alia*, that under the plain language of the statute, the examination would not constitute an "interrogation" in a "place of detention." In response, defense counsel reiterated its position that the proposed examination was precisely the "type of interrogation" contemplated by section 103-2.1. Defense counsel further maintained that recording the examination would not require "a big invasive camera" and that it would be "no big deal to punch the button on a tape recorder"

at the beginning of the exam.

¶ 15     With respect to the defendant's request that the trial court limit Markos's proposed examination to the issue of the defendant's sanity at the time of the offense, the State argued that it should be given the opportunity to present evidence tending to dispute DHS's determination that the defendant was unfit to stand trial. Defense counsel countered that the relevant statutes did not authorize the State to obtain an independent opinion regarding a defendant's fitness.

¶ 16     In support of the defendant's motion for summary determination, defense counsel argued that it was undisputed that the defendant was unfit to stand trial and would not likely "be restored to fitness within a year." Defense counsel further argued that the rules of civil procedure were wholly applicable under the circumstances and that it was time to "proceed to a discharge hearing." See 725 ILCS 5/104-25 (West 2008). In response, the State maintained that it would be inappropriate for the court to enter a summary judgment on the issue of the defendant's fitness to stand trial.

¶ 17     In February 2012, after taking the matter under advisement, the trial court entered a written order denying the State's motion to reconsider and granting the defendant's motion for a summary determination that he was unfit to stand trial. The trial court further ordered that Markos's proposed examination be "limited to exploring and rendering an opinion on the issue of the defendant's sanity and/or mental illness at the time of the alleged offense[s]." The trial court's order indicated that the cause would be set for a discharge hearing once defense counsel received a copy of Markos's examination report. The State subsequently filed a timely notice of appeal. See Ill. S. Ct. R. 604(a)(1), (e) (eff. July 1, 2006); R. 606(b) (eff. Mar. 20, 2009).

¶ 18                                    DISCUSSION

¶ 19     The State argues that the trial court erred in (1) ordering that Dr. Markos's proposed examination of the defendant be audio-recorded pursuant to section 103-2.1, (2) limiting the examination to the issue of the defendant's sanity at the time of the alleged offenses, and (3) granting summary judgment on the question of the defendant's fitness to stand trial. We will address each contention in turn.

¶ 20                                     Section 103-2.1

¶ 21     The State argues that the trial court erred in ordering that Markos's proposed examination be recorded pursuant to section 103-2.1, which the State has consistently maintained is inapplicable under the circumstances. In response, the defendant asserts, *inter alia*, that we have no jurisdiction to address the State's complaint because the trial court's order was not an order "suppressing evidence" for purposes of Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006). We agree with the State.

     "Supreme Court Rule 604(a)(1) allows the State to obtain review of an 'order or judgment the substantive effect of which results in *** suppressing evidence.' [Citation.] 'For the purposes of this aspect of Rule 604(a)(1), there is no substantive distinction

between evidence that is "excluded" and evidence that is "suppressed." ' [Citation.] Thus, the pertinent question in determining whether jurisdiction exists under Rule 604(a)(1) is whether the order, in fact, is one that suppresses or excludes evidence." *People v. Smith*, 399 Ill. App. 3d 534, 537 (2010).

¶ 22   Where a defendant has given notice that he may assert the defense of insanity, the State is statutorily entitled to have an expert of its choice examine the defendant on the issue. 725 ILCS 5/115-6 (West 2008). Here, the State has retained Dr. Markos to examine the defendant on the issue of insanity. Indicating that the presence of a recording device will interfere with the examination, however, Markos has advised that he will not conduct the exam if it has to be audio-recorded. Surreptitiously recording the examination would, of course, be illegal. See 720 ILCS 5/14-2(a) (West 2008). Under the circumstances, the substantive effect of the trial court's section 103-2.1 ruling precludes the State from obtaining information that it might otherwise be entitled to use. "When an order prevents information from being presented to the fact finder, evidence is suppressed, and the State may appeal that order." *People v. Kruger*, 327 Ill. App. 3d 839, 843 (2002). Moreover, in May 2012, when denying the defendant's motion to dismiss the State's appeal in the present case, we implicitly rejected the defendant's argument that we are without jurisdiction to consider this issue. That ruling now stands as the law of the case (*People v. Hopkins*, 235 Ill. 2d 453, 469 (2009)), and we thus turn to the merits of the State's argument.

¶ 23   Pursuant to section 103-2.1, statements made by a murder suspect during "a custodial interrogation at a police station or other place of detention shall be presumed to be inadmissible as evidence," unless they are electronically recorded. 725 ILCS 5/103-2.1(b) (West 2008). The statute defines a "custodial interrogation" as "any interrogation during which (i) a reasonable person in the subject's position would consider himself or herself to be in custody and (ii) *** a question is asked that is reasonably likely to elicit an incriminating response." 725 ILCS 5/103-2.1(a) (West 2008). Section 103-2.1 thereby codifies "the common-law definition of custodial interrogation developed in *Miranda* and progeny." *People v. Harris*, 2012 IL App (1st) 100678, ¶ 52. Section 103-2.1 defines "place of detention" as

"a building or a police station that is a place of operation for a municipal police department or county sheriff department or other law enforcement agency, not a courthouse, that is owned or operated by a law enforcement agency at which persons are or may be held in detention in connection with criminal charges against those persons." 725 ILCS 5/103-2.1(a) (West 2008).

The applicability of section 103-2.1 is an issue of statutory interpretation that is reviewed *de novo*. *People v. Amigon*, 239 Ill. 2d 71, 84 (2010).

¶ 24   Here, the trial court ordered that the State's proposed examination take place at the Alton mental health facility, where the defendant is being held and treated. At the hearing on the State's motion to reconsider, the parties stipulated that the Alton facility is not a "place of detention" as defined by section 103-2.1, and the trial court accepted the parties' stipulation. Because the proposed examination will not be conducted in a "place of detention," section 103-2.1 is inapplicable, and we thus agree with the State that the trial court erred in ordering

that the examination be recorded pursuant to section 103-2.1. We accordingly reverse that portion of the trial court's order. That said, we need not address the State's contention that a court-ordered psychological examination is not a "custodial interrogation" for purposes of section 103-2.1.

¶ 25                                    Insanity v. Fitness

¶ 26    The State argues that the trial court erred in limiting its proposed examination to the issue of the defendant's sanity at the time of the alleged offenses. Asserting that it "is not required to accept the conclusions of DHS," the State maintains that Markos should also be permitted to examine the defendant for the purpose of determining his fitness to stand trial. The defendant counters that the State is not statutorily authorized to seek a second opinion as to his fitness and that we should accordingly reject the State's contention as the trial court did below. "The issue before us is one of statutory construction, and thus our review is *de novo.*" *People v. Tidwell*, 236 Ill. 2d 150, 156 (2010).

¶ 27    Article 104 "sets out a comprehensive scheme for criminal defendants found unfit to stand trial" (*People v. McBrien*, 144 Ill. App. 3d 489, 491-92 (1986)), and its provisions govern the procedures applicable to such defendants (*In re Evelyn S.*, 337 Ill. App. 3d 1096, 1103 (2003)). Article 104, section 104-13, subsection (a), specifically provides, "When the issue of fitness involves the defendant's mental condition, the court shall order an examination of the defendant by one or more licensed physicians, clinical psychologists, or psychiatrists chosen by the court." 725 ILCS 5/104-13(a) (West 2008). Section 104-13 further provides that at the defendant's request, the trial court may, in its discretion, appoint "in addition to the expert or experts chosen pursuant to subsection (a) of this [s]ection, a qualified expert selected by the defendant to examine him." 725 ILCS 5/104-13(e) (West 2008); see also 725 ILCS 5/104-11(b) (West 2008). As the defendant observes, however, article 104 does not authorize the State to select an expert to independently examine a defendant regarding his fitness to stand trial. We recognize, as previously noted, that the State is entitled to have an expert of its choice examine a defendant who has given notice that he may assert the defense of insanity (see 725 ILCS 5/115-6 (West 2008)), but "fitness and insanity raise different inquiries" (*People v. Burton*, 184 Ill. 2d 1, 26 (1998)), and "there are significant differences between a claim of unfitness to stand trial and a plea of insanity" (*People v. Clay*, 361 Ill. App. 3d 310, 324 (2005)). "Fitness addresses a defendant's ability to function and participate in court proceedings," while "insanity involves whether a defendant, because of a mental disease or defect, lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." *Burton*, 184 Ill. 2d at 26. A finding that a defendant is unfit to stand trial is not "proof of insanity at the time of the offense." *People v. Manns*, 373 Ill. App. 3d 232, 240 (2007).

¶ 28    "The cardinal rule of statutory interpretation is to ascertain and give effect to the legislative intent, and the best indication of the legislative intent is the language used in the statute." *Bigelow Group, Inc. v. Rickert*, 377 Ill. App. 3d 165, 169 (2007). Article 104 does not provide for a fitness examination by a State-chosen expert, and "[w]e cannot read words into a statute that are not there." *Chicago Tribune Co. v. Board of Education of the City of*

*Chicago*, 332 Ill. App. 3d 60, 67 (2002). The State suggests that it should be given the opportunity to challenge DHS's findings that the defendant remains unfit to stand trial, but as the defendant candidly puts it, the State's "gripe is with the legislature." We also note that article 104 implicates due process concerns that do not apply to the State. See *People v. Rink*, 97 Ill. 2d 533, 543-44 (1983); *People v. Christy*, 206 Ill. App. 3d 361, 367 (1990).

¶ 29 As a matter of statutory construction, we conclude that article 104 does not provide for a fitness examination by an expert chosen by the State. The trial court thus properly limited Markos's proposed examination to the issue of the defendant's sanity at the time of the alleged offenses, and we accordingly affirm that portion of the trial court's order.

¶ 30             Summary Judgment

¶ 31 When granting the defendant's motion for a summary determination as to his fitness to stand trial, the court determined that the defendant was unfit, that no special provisions could compensate for his disability, and that there was not a reasonable probability that he would attain fitness within one year. The trial court then indicated that in light of these findings, the matter would be set for a discharge hearing once defense counsel received a copy of Markos's examination report. On appeal, the State argues that the trial court acted without authority when entering summary judgment on the issue of the defendant's fitness to stand trial. We disagree and conclude that the summary judgment was essentially a clarification as to the status of the case and that the clarification properly triggered further proceedings pursuant to article 104.

¶ 32 As previously indicated, the trial court originally found the defendant unfit to stand trial on October 20, 2009. Because on the evidence before it, the trial court was unable to determine whether there was a substantial probability that the defendant would attain fitness to stand trial within one year of that date, the court remanded him to DHS custody for treatment. See 725 ILCS 5/104-16(d), 104-17(b) (West 2008). Thereafter, DHS submitted a treatment plan and numerous progress reports (see 725 ILCS 5/104-17(e), 104-18 (West 2008)), and from December 2009 to June 2010, when the conflicting reports arose, it appeared that the defendant would attain fitness within one year from the date of the original finding of unfitness, *i.e.*, by October 20, 2010. On October 19, 2010, however, DHS submitted a progress report opining that there was not a substantial probability that the defendant would attain fitness by that date. Additionally, in reports filed in December 2010 and March, July, September, and December 2011, DHS concluded that the defendant remained unfit to stand trial. Those reports also noted that the defendant's "one[-]year term of being found unfit [had] expired on October 20, 2010."

¶ 33 Pursuant to section 104-20, a defendant ordered to undergo treatment for the purpose of rendering him fit to stand trial is entitled to a status hearing every 90 days. 725 ILCS 5/104-20(a) (West 2008); *In re Evelyn S.*, 337 Ill. App. 3d at 1104. At a 90-day hearing, if the trial court finds that a defendant is still unfit to stand trial, the court must determine "[w]hether the defendant is making progress under treatment toward attainment of fitness within one year from the date of the original finding of unfitness." 725 ILCS 5/104-20(a) (West 2008). Whenever the trial court receives a report from DHS stating that there is not a substantial

probability that he will attain fitness "within one year from the date of the original finding of unfitness," a defendant ordered to undergo treatment is also entitled to a "first hearing." 725 ILCS 5/104-18(a)(3), 104-20(a) (West 2008). At either hearing, if the trial court determines that there is not a substantial probability that the defendant will attain fitness within one year from the date of the original finding of unfitness, "the court shall proceed pursuant to [s]ection 104-23." 725 ILCS 5/104-20(d) (West 2008). Pursuant to section 104-23, upon a determination that there is not a substantial probability that the defendant will attain fitness within one year from the date of the original finding of unfitness, the defendant may move for a discharge hearing pursuant to section 104-25. 725 ILCS 5/104-23(a) (West 2008). Moreover, pursuant to section 104-23, "any time" the trial court finds that there is not a substantial probability that the defendant will attain fitness within one year from the date of the original finding of unfitness, "or if at the end of one year from that date the court finds the defendant still unfit," the State "shall request" that the court either set the matter for a discharge hearing pursuant to section 104-25, release the defendant and dismiss the charges against him, or remand him to DHS custody for civil commitment proceedings. 725 ILCS 5/104-23(a), (b) (West 2008). "Significantly, only if the State sustains its burden of proof at the discharge hearing may a defendant be remanded for a period of treatment longer than the one-year period from the finding of unfitness [provided] for in section 104-23." *McBrien*, 144 Ill. App. 3d at 493.

¶ 34    As a matter of statutory construction, it is clear that article 104 envisions that once it is determined that it is unlikely that an unfit defendant will attain fitness within one year after initially being found unfit, the cause must proceed to a discharge hearing. One of article 104's "primary objectives" is to ensure that a defendant deemed unfit to stand trial "will not be indeterminately institutionalized," and "[t]he principal vehicle for achieving this objective is a 'discharge hearing.' " *Id.* at 492.

¶ 35    Here, on October 20, 2009, the trial court made its original finding that the defendant was unfit to stand trial, and the defendant was remanded to DHS custody for treatment. The record indicates that in the year that followed, no 90-day hearings were held, and no action was taken on DHS's October 19, 2010, progress report indicating that the defendant would not be fit to stand trial by October 20, 2010. In December 2010, the State filed its motion requesting a "first hearing" pursuant to section 104-20(a), but it does not appear that the requested hearing was ever held. Moreover, it does not appear that any action was ever taken on the subsequent DHS reports reiterating that the defendant's "one[-]year term of being found unfit [had] expired on October 20, 2010," or on the DHS report admonishing that pursuant to section 104-20, the defendant's cause should proceed to a discharge hearing.

¶ 36    A motion for summary judgment should only be granted where the moving party demonstrates that there is no genuine issue of material fact and that it is "entitled to judgment as a matter of law." *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 423 (1998). "Our review of an order granting summary judgment is *de novo*." *Id.* at 424.

¶ 37    Here, when the trial court granted the defendant's motion for a summary determination, over 27 months had passed since the defendant had originally been found unfit to stand trial; the defendant had not been restored to fitness during his initial one-year treatment term, and he remained unfit. As previously noted, article 104 envisions that once it is determined that

-9-

a defendant is unfit and that there is not a reasonable probability that he will attain fitness within one year of the original finding of unfitness, the cause should proceed to a discharge hearing. Under the circumstances, whether we view the defendant's request that the trial court rule on the matter as a motion for summary judgment brought pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)), as a motion to clarify the status of the fitness proceedings, or as a late motion requesting one of the numerous hearings that he was entitled to pursuant to section 104-20, the trial court did not err in entering a summary determination on the issue of the defendant's fitness and ordering that the cause be set for a discharge hearing once defense counsel receives a copy of Dr. Markos's examination report. Although lengthy delays in article 104 proceedings are frowned upon (see *People v. Lavold*, 262 Ill. App. 3d 984, 991 (1994)), and awaiting the receipt of Markos's report will undoubtedly cause further delay, a defendant is entitled to assert the defense of insanity at a discharge hearing (see *Manns*, 373 Ill. App. 3d at 239-42), and the State is entitled to challenge that defense (see *People v. Knuckles*, 226 Ill. App. 3d 714, 720 (1992), *aff'd*, 165 Ill. 2d 125 (1995)).

¶ 38    We lastly note that at a discharge hearing, if a defendant charged with first-degree murder is neither acquitted nor found not guilty by reason of insanity, the maximum extended treatment period that a trial court can impose is five years beyond the initial one-year treatment term. 725 ILCS 5/104-25(d)(2) (West 2008); *Rink*, 97 Ill. 2d at 538. However, "[t]he date of the trial court's supervisory jurisdiction over the defendant begins to run from the date of the original finding of defendant's unfitness." *Lavold*, 262 Ill. App. 3d at 990. "The extended period for treatment would then begin or relate back to one year from the original finding of unfitness." *Id.* Here, the defendant can thus be remanded to DHS custody for further treatment until October 19, 2015, at which time the trial court must determine whether he is subject to involuntary commitment. See *id.*; 725 ILCS 5/104-25(g) (West 2008).

¶ 39                                          CONCLUSION

¶ 40    For the foregoing reasons, we affirm the trial court's judgment granting the defendant's motion for a summary determination as to his fitness to stand trial, and we further affirm the court's judgment limiting the State's proposed examination to the issue of the defendant's sanity at the time of the alleged offenses. Given that the examination will be performed at the Alton mental health facility, however, it need not be recorded pursuant to section 103-2.1. We accordingly reverse that portion of the trial court's order. The defendant's cause is hereby remanded for a discharge hearing pursuant to section 104-25 of the Code of Criminal Procedure of 1963 (725 ILCS 5/104-25 (West 2008)). The hearing should be held as soon as possible following the receipt of Dr. Markos's report.

¶ 41    Affirmed in part and reversed in part; cause remanded.