# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Dillavou*, 2011 IL App (2d) 091194

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY R DILLAVOU, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-09-1194 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | July 27, 2011<br><br>September 28, 2011<br>September 28, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The evidence was sufficient to sustain defendant's conviction for residential burglary based on his conduct in remaining, without authority, inside a residence in which he was performing painting work for a general contractor and taking a pouch containing a camera that belonged to a resident, and the appellate court rejected defendant's arguments that his authority to enter the house was never withdrawn and that there was no evidence he intended to take the camera before he entered or that he stayed in the house after forming the intent to take the camera. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-CF-1551; the Hon. Peter J. Dockery, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Alan D. Goldberg and Emily E. Filpi, both of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Robert B. Berlin, State's Attorney, of Wheaton (Lawrence M. Bauer and Adam D. Young, both of State's Attorneys Appellate Prosecutor's Office, of counsel), and Constance Augsburger, of Mt. Morris, for the People. |
| | |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices McLaren and Bowman concurred in the judgment and opinion. |

## OPINION

¶ 1    Following a bench trial, defendant, Jeffrey R. Dillavou, was convicted of residential burglary (720 ILCS 5/19-3(a) (West 2008))[1], and he was sentenced to four years' imprisonment. On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt. We affirm.

¶ 2    The facts relevant to resolving this appeal are as follows. In June 2009, defendant was hired by a general contractor to do work on the Naperville home of Joseph and Sandra Phelan. According to Sandra, work on the home was limited to replacing windows in the master bedroom. Defendant's job included priming and painting the trim on those windows. Defendant testified that, in addition to the master bedroom windows, his boss, Matthew Newman, was installing a window sill for a window in the bathroom next to the Phelans' kitchen. Sandra allowed defendant in her home and outside of it in order to complete the work related to replacing the master bedroom windows. She did not give defendant permission to be in her home for any other purpose.

¶ 3    On June 18, 2009, at around 4 p.m., defendant finished painting the window trim in the Phelans' master bedroom. In the process of cleaning up his supplies for the day, which included washing the paint brushes he had used and closing paint cans, defendant noticed a red pouch sitting on the kitchen counter. Defendant believed that the red pouch contained a tape measure or "something along those lines." Although no other tools were on the kitchen counter, in the bathroom next to the kitchen, approximately 10 feet from

---

[1]Defendant was charged with knowingly and without authority entering the dwelling place of another with the intent to commit a theft therein and knowingly and without authority remaining in the dwelling place of another with the intent to commit a theft therein. The trial court ultimately found defendant not guilty of entering with the intent to commit a theft therein but guilty of remaining with the intent to commit a theft therein.

the red pouch, were a hammer and other tools that Newman had been using to install the window sill. Defendant grabbed the hammer and other tools in the bathroom, in addition to the red pouch sitting on the kitchen counter, and brought them out to the attached garage. Defendant left the paint in the garage and put the tools, but not the red pouch, in Newman's truck. Defendant took the red pouch with him. After leaving the Phelans' home, defendant discovered that the red pouch contained a camera.

¶ 4     At around 8 p.m. that night, defendant was involved in a traffic-related offense. Officers who responded to the scene found the camera in the car. When defendant was asked who owned the camera, he gave four conflicting statements. These statements included that he owned the camera, that the camera belonged to his boss, that defendant found the camera, and that defendant stole the camera.

¶ 5     Around June 19, 2009, the police showed Joseph the camera they recovered from defendant. Joseph told the police that the camera belonged to Sandra, and photographs saved on the camera depicted Joseph with his family. After receiving the camera, Joseph informed Sandra that the police recovered her camera from defendant. Sandra indicated that she kept the camera in plain view in a red pouch on the counter in the Phelans' kitchen. The counter was located approximately 15 feet from the door that led from the house to the garage. This was the door that defendant and the other workmen used to enter and exit the Phelans' home.

¶ 6     Relying on the limited-authority doctrine, the trial court found defendant guilty of residential burglary. In doing so, the trial court found defendant incredible, commenting specifically that it believed that defendant lied when he said he thought that the red pouch contained a tape measure.

¶ 7     Soon thereafter, defendant moved for a new trial, arguing, among other things, that the State failed to prove him guilty beyond a reasonable doubt of residential burglary, because the evidence did not establish that he lacked the authority to be in the Phelans' home and that he remained in the home after taking the camera. The trial court denied the motion. Defendant subsequently was sentenced, and this timely appeal followed.

¶ 8     On appeal, defendant argues that he was not proved guilty of residential burglary beyond a reasonable doubt. When assessing the sufficiency of the evidence, we ask whether, when viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Anderson*, 188 Ill. 2d 384, 392 (1999). The trier of fact is responsible for determining the witnesses' credibility, weighing their testimony, and deciding what reasonable inferences to draw from the evidence. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004). A reviewing court will not substitute its judgment for that of the trier of fact on questions concerning the sufficiency of the evidence, unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of guilt. *People v. Ranstrom*, 304 Ill. App. 3d 664, 678 (1999).

¶ 9     A person commits residential burglary in one of two ways. See *People v. Boone*, 217 Ill. App. 3d 532, 533 (1991); *People v. Peace*, 88 Ill. App. 3d 1090, 1093 (1980). Specifically, the residential burglary statute provides:

"A person commits residential burglary who knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft." 720 ILCS 5/19-3(a) (West 2008).

¶ 10  Here, defendant was not convicted under the first part of the residential burglary statute. That is, defendant was not found guilty of "knowingly and without authority enter[ing]" the Phelans' home "with the intent to commit therein a *** theft." 720 ILCS 5/19-3(a) (West 2008); see *Peace*, 88 Ill. App. 3d at 1093. Rather, defendant was convicted under the second part of the residential burglary statute. Specifically, defendant was convicted of "knowingly and without authority remain[ing] within" the Phelans' home "with the intent to commit therein a *** theft." 720 ILCS 5/19-3(a) (West 2008); see *Peace*, 88 Ill. App. 3d at 1093.

¶ 11  Resolving whether defendant was proved guilty beyond a reasonable doubt of residential burglary requires us to interpret the portion of the residential burglary statute under which defendant was convicted. When interpreting a statute, we must ascertain and give effect to the legislature's intent. *People v. Jones*, 214 Ill. 2d 187, 193 (2005). The best indication of the legislature's intent is the language of the statute itself. *People v. Belk*, 203 Ill. 2d 187, 192 (2003). When the statutory language is clear and unambiguous, we must apply it as written, without resorting to any extrinsic aids of statutory construction. *People v. Williams*, 239 Ill. 2d 503, 506 (2011). Moreover, we cannot read into a statute exceptions, limitations, or conditions for which the legislature did not provide. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 441 (2010).

¶ 12  The residential burglary statute's clear and unambiguous language at issue here indicates that a defendant is guilty of residential burglary if he remains in the home of another with the intent to steal. That is, a defendant is guilty of residential burglary if, while inside a house in which he has the authority to be, he forms the intent to commit a theft therein. The facts here support the conclusion that defendant did just that.

¶ 13  Specifically, defendant testified that he was in the Phelans' kitchen, a place in which he was authorized to be, when he picked up the red pouch. Although defendant indicated that he thought that the red pouch contained a tape measure, the trial court found defendant incredible on this point, and the evidence supported this conclusion. That is, defendant did not indicate to whom he thought the tape measure belonged, and the evidence clearly established that it did not belong to him, as he did not know exactly what the red pouch contained. Instead of leaving the red pouch where he found it, opening the red pouch to see what it contained, or asking the Phelans, Newman, or any other coworker about it, defendant took the red pouch from the Phelans' kitchen counter and carried it away.

¶ 14  Added to these facts is the inference that defendant intended to steal the red pouch. The evidence established that no other tools that belonged to defendant or Newman were anywhere near the red pouch. Rather, the nearest tools were located in a separate room, a bathroom, which was 10 feet from the red pouch. In the process of gathering up Newman's tools from that bathroom, defendant grabbed the red pouch, went out to the

-4-

garage, and dropped off the supplies that were to be kept at the Phelans' home until the work on the master bedroom windows was complete. The red pouch was not one of the items that defendant left behind in the Phelans' garage. After dropping off materials in the Phelans' garage, defendant proceeded to Newman's truck, where he deposited Newman's tools. The red pouch was not one of the items that defendant left in Newman's truck. Rather, defendant took the red pouch with him when he left the Phelans' home that day. At some later point, defendant discovered that the red pouch contained a camera. When defendant made this discovery, he did nothing to ensure that the camera would be returned to the Phelans. That is, instead of returning the camera to the Phelans or calling them or Newman, defendant kept the camera. Approximately four hours later, when defendant was stopped for a traffic offense, the police recovered the camera and asked defendant to whom the camera belonged. Defendant gave four conflicting statements. None of those statements was consistent with the testimony that defendant gave at trial. From all of this evidence, a rational trier of fact most certainly could infer that defendant, who was allowed to be in the Phelans' home, formed the intent to take Sandra's camera while he was in the Phelans' kitchen. Thus, a rational trier of fact could find defendant guilty of residential burglary beyond a reasonable doubt.

¶ 15    Defendant argues that he could not be found guilty of residential burglary by remaining without authority, because (1) his authority to enter the Phelans' house was never revoked or withdrawn; (2) the evidence failed to indicate that he stayed for any period of time in the Phelans' house after forming the intent to take the camera; and (3) the evidence did not indicate that he had the intent to take the camera before he entered the Phelans' home. We find none of these arguments persuasive.

¶ 16    First, defendant suggests that a defendant's authority to be in the home of another person must be *expressly* withdrawn before he may be convicted of residential burglary by unlawfully remaining. Nothing in the residential burglary statute requires this. Indeed, in *People v. Racanelli*, 132 Ill. App. 3d 124, 134 (1985), which is one of the cases on which defendant relies, the court recognized that a defendant's authority to be in the home of another person is *implicitly* withdrawn when the defendant forms the intent to commit a crime. Here, as indicated above, a rational trier of fact could infer from the evidence that defendant formed the intent to take the camera when he was in the Phelans' home.

¶ 17    Second, even assuming that remaining requires some specific duration, which we do not necessarily accept, the evidence here indicated that defendant did not, as he suggests, grab the camera as he was running out of the back door of the Phelans' house. Rather, the evidence revealed that defendant was in the process of picking up Newman's tools, which were not in the kitchen, when he saw the red pouch sitting on the kitchen counter and took it. Defendant then deposited in the proper places all of the supplies he had gathered, except for the red pouch, and left the Phelans' home.

¶ 18    Third, in contrast to defendant's view, "[a] criminal intent formed after a lawful entry will satisfy the offense of burglary by unlawfully remaining." *Boone*, 217 Ill. App. 3d at 533. If, as defendant argues, the State had to prove that he had the intent to commit a theft before he entered the Phelans' home, the second part of the residential burglary statute,

*i.e.*, remaining without authority, would be rendered completely meaningless, as all defendants charged with residential burglary would fall under the first part of the residential burglary statute regardless of whether those defendants' entries were authorized or not. See *People v. Peeples*, 155 Ill. 2d 422, 487-88 (1993) (noting that a defendant who intends to commit a crime in the dwelling place of another and is allowed to enter that home enters without authorization, as a defendant's criminal actions vitiate the consent given to the defendant).

¶ 19    Given our resolution of this appeal, we find it unnecessary to decide whether the trial court was correct in finding that the limited-authority doctrine applies to defendants charged with residential burglary by remaining without authority. See *People v. Nash*, 173 Ill. 2d 423, 432 (1996) (court may affirm on any basis the record supports).

¶ 20    For these reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 21    Affirmed.