# Illinois Official Reports

## Appellate Court

---

### *People v. Bradford*, 2014 IL App (4th) 130288

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE TRAVIS BRADFORD, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0288 |
| Filed | November 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's burglary conviction was affirmed, notwithstanding his contentions that he was not proved guilty beyond a reasonable doubt and that the circuit clerk lacked authority to enter monetary assessments against him, since the evidence established that he entered a store and remained there "without authority" by moving through the store stealing merchandise, especially when his purpose for being there was inconsistent with the purpose for which the store was open to the public and any authority defendant had to remain in the store was implicitly withdrawn when he formed the intent to steal, and with respect to the circuit clerk's assessments for probation and court services operations and the State's Attorney's records automation, those assessments were fees that were properly assessed by the circuit clerk to pay for the presentence investigation and report prepared by the probation office for the trial court's use at defendant's sentencing and the State's Attorney's expenses arising from the automated record-keeping systems. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 12-CF-672; the Hon. John C. Costigan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Pelletier, Jacqueline L. Bullard, and Nancy L. Vincent, all of State Appellate Defender's Office, of Springfield, for appellant.

Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Pope and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a January 2013 bench trial, the trial court found defendant guilty of burglary (720 ILCS 5/19-1(a) (West 2010)) and sentenced defendant to three years in prison. Defendant appeals, asserting (1) the State failed to prove him guilty of burglary beyond a reasonable doubt and (2) the monetary assessments imposed by the circuit clerk must be vacated as the clerk lacked authority to enter them. We affirm.

¶ 2                                I. BACKGROUND

¶ 3        On July 25, 2012, defendant was charged by indictment with burglary, a Class 2 felony (720 ILCS 5/19-1(a), (b) (West 2010)). The indictment alleged that on July 19, 2012, defendant "knowingly and without authority remain[ed] within the building of Walmart, with the intent to commit therein a felony or a theft."

¶ 4        On January 18, 2013, defendant's bench trial commenced. Stephen Norton, an asset-protection associate for Walmart, testified first for the State. Norton testified he was working at Walmart on July 19, 2012, when he saw defendant enter the store. Norton was familiar with defendant and "knew he had to be watched." According to Norton, he observed defendant, upon entering the store, walk directly to a display of newly released digital video discs (DVDs) located near the store's entrance. Norton then watched as defendant took two DVDs from the display and proceeded to the customer-service desk, where he conducted a "no receipt return." In exchange for the DVDs, Norton testified defendant received a Walmart gift card reflecting a credit for the price of the DVDs he "returned." Norton testified that after obtaining the gift card, defendant went into the men's apparel department, where he selected a hat, and then to the shoe department, where defendant selected some shoes. While he was in the shoe department, Norton stated defendant removed the tag from the hat and put the hat on his head. Defendant then produced a Walmart bag from his person and placed the shoes in the bag.

¶ 5        Norton testified defendant next met up with an unknown male and the two of them went to a cash register, where defendant paid for the unknown male's items using the gift card he received from customer service. According to Norton, defendant did not attempt to pay for the

merchandise he had concealed in the Walmart bag or the hat he was wearing. Norton testified after defendant and the unknown male passed the last point of purchase, Norton and his partner approached them. They identified themselves as loss-prevention employees and told defendant and his companion they needed to talk to them about unpaid merchandise. Defendant refused to talk, handed the bag containing the "paid-for" merchandise to the other male, and walked out of the store. Norton called the Bloomington police department.

¶ 6    Norton testified that throughout the incident, he personally watched defendant as he moved through the store from a distance of no more than 20 feet. Norton testified he had either an unobstructed view of defendant or he watched defendant through holes in the Peg-Boards of the shelves. In a photograph introduced by the State, Norton identified the two DVDs from the fraudulent return, the hat defendant wore out of the store, the pair of shoes, and a bottle of Dr. Pepper, all of which were contained in the Walmart bag.

¶ 7    Ryne Donovan, a Bloomington police officer, testified next for the State. Donovan responded to a retail-theft call from Walmart on July 19, 2012. Upon arriving at Walmart, Donovan stated he met with two loss-prevention employees who pointed out defendant in a neighboring parking lot as the suspect in the theft. After being read his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant elected to speak to Donovan. According to Donovan, defendant told him the following.

> "[Defendant] went into [Walmart], selected two DVDs from a display, *** returned them to customer service without paying for them, [and] got a gift card for them. He then went back into the store to shop around. He selected a blue cookie monster hat, a 20-ounce Dr. Pepper and a pair of shoes and concealed them in a [Walmart] bag. He then continued to shop and he selected a package of socks and tank tops which he did not conceal. He brought them up to the register, paid for the socks and tank tops with the gift card that he got from the DVDs and then he went to the front of the store without paying for the three items that he concealed in the [Walmart] bag. He met up with a friend, handed the bag of tank tops and socks to his friend. He was then confronted by [Walmart] loss prevention."

¶ 8    The State rested and defendant moved for a directed verdict. Defendant argued that although he committed a retail theft–an offense for which he was not charged–the State failed to prove he committed burglary by unlawfully remaining as charged because he had authority to enter Walmart, did not enter into any unauthorized places within Walmart, and left the store after completing the offense. The State asserted the fact defendant had a Walmart bag on his person was evidence he entered the store with the intent to commit a theft, thus satisfying its burden under the burglary statute. The trial court denied defendant's motion, finding sufficient evidence was presented to establish defendant "entered the building with the intent to commit a theft therein," and thus, the State "satisfie[d] the entering the building without authority aspect of the statute."

¶ 9    The only evidence introduced by defendant was a McLean County jail report detailing the property defendant had on his person at the time he was arrested. According to the report, defendant's property included, among other items, $29.47 in cash, a blank $50 money order, and several credit cards.

¶ 10    During closing argument, defense counsel reiterated defendant was charged with the offense of burglary for *remaining in* Walmart with the intent to commit a theft, rather than *entering* Walmart with the intent to commit a theft. Counsel again argued defendant had lawful

authority to enter the store, did not venture into any unauthorized area within the store, and exited the store after committing the offense. Counsel noted defendant had cash on his person and the ability to pay for the merchandise at the time of the offense and that his actions were completed in "a spur of the moment." Counsel argued defendant was guilty of the offense of retail theft, not burglary.

¶ 11 The trial court found defendant guilty of burglary. Specifically, the court found that defendant entered Walmart without lawful authority with the intent to commit a theft, and he also "remain[ed] in the building through his actions without lawful authority."

¶ 12 On February 14, 2013, defendant filed a motion for a new trial, asserting among other things that the State failed to prove him guilty of burglary beyond a reasonable doubt.

¶ 13 On March 18, 2013, the trial court sentenced defendant to three years in prison, imposed a number of monetary assessments, and awarded defendant $965 in pretrial-detention credit. Immediately thereafter, the court heard and denied defendant's motion for a new trial. At some later point, the circuit clerk imposed a $2 State's Attorney records automation assessment and a $10 probation and court services assessment.

¶ 14 This appeal followed.

¶ 15                                                    II. ANALYSIS

¶ 16 On appeal, defendant asserts (1) the State failed to prove him guilty of burglary beyond a reasonable doubt and (2) the monetary assessments imposed by the circuit clerk must be vacated as the clerk lacked authority to enter them.

¶ 17                                    A. Sufficiency of the Evidence

¶ 18 Defendant first asserts the State failed to prove him guilty of burglary as charged in the indictment. Specifically, defendant argues the evidence at trial was insufficient to support his conviction for burglary by "without authority remain[ing] within" Walmart with the intent to commit a theft therein.

¶ 19 When considering a challenge to the sufficiency of the evidence, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Campbell*, 146 Ill. 2d 363, 374, 586 N.E.2d 1261, 1266 (1992). "The trier of fact has the responsibility to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence." *People v. Burney*, 2011 IL App (4th) 100343, ¶ 25, 963 N.E.2d 430. "[We] will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt [citation]." *Campbell*, 146 Ill. 2d at 375, 586 N.E.2d at 1266.

¶ 20 Section 19-1(a) of the Criminal Code of 1961 (720 ILCS 5/19-1(a) (West 2010)) provides, "A person commits burglary when without authority he knowingly enters or without authority remains within a building *** or any part thereof, with intent to commit therein a felony or theft." In other words, a person commits burglary by either (1) entering a building without authority with the intent to commit a felony or theft therein or (2) remaining in a building without authority with the intent to commit a felony or theft therein. Here, the State charged

defendant with the second type of burglary, alleging he "knowingly and without authority remain[ed] within the building of Walmart, with the intent to commit a felony or a theft."

¶ 21   Defendant asserts "[t]he trial court erred in convicting [him] of burglary by 'without authority remaining within' [Walmart], as there is insufficient evidence that he knowingly remained within for the purpose of theft." According to defendant, he "had lawful authorization to enter [Walmart], did not exceed the physical scope of that authority, committed the offense during business hours, and left after completing his criminal actions" and thus, he contends his actions were consistent with the offense of retail theft, not burglary. In support of his contention, defendant cites *People v. Vallero*, 61 Ill. App. 3d 413, 415, 378 N.E.2d 549, 550 (1978), and *People v. McDaniel*, 2012 IL App (5th) 100575, ¶ 19, 978 N.E.2d 645.

¶ 22   In *Vallero*, the defendant entered a dairy, requested a job application, and was directed to sit at a specific desk to fill out the application. *Vallero*, 61 Ill. App. 3d at 414, 378 N.E.2d at 549. After the defendant left, an employee of the dairy discovered payroll checks were missing from the desk where defendant had sat, which the defendant later forged and cashed. *Id*. at 414, 378 N.E.2d at 549-50. Following a jury trial, the defendant was convicted of burglary, among other crimes. *Id*. at 414, 378 N.E.2d at 549. On appeal, the Third District Appellate Court vacated the defendant's burglary conviction, holding that he "lawfully entered the dairy and [the evidence] fail[ed] to establish that when he made his entry he was possessed with an intent to commit a theft." *Id*. at 415, 378 N.E.2d at 550. According to the *Vallero* court, an intent to steal formed after a lawful entry cannot support a burglary charge. *Id*.

¶ 23   In *McDaniel*, the defendant entered a Walmart store wearing sunglasses, a heavy coat, and a ski cap, raising the suspicion of the store's loss-prevention agent. *McDaniel*, 2012 IL App (5th) 100575, ¶ 3, 978 N.E.2d 645. The agent tracked the defendant through the store and watched him remove three fishing reels from their packages, place the reels inside his coat, and walk past the last point of purchase without paying for them. *Id*. ¶ 4, 978 N.E.2d 645. A jury found the defendant guilty of burglary by remaining within Walmart with the intent to commit a theft but found him not guilty of burglary for entering the store with the intent to commit a theft. *Id*. ¶ 7, 978 N.E.2d 645. On appeal, the Fifth District Appellate Court considered "whether, having authority to enter the building and apparently not exceeding the physical scope of that authority, defendant's formation of an intent to commit a theft and acting upon that intent constituted the offense of burglary." *Id*. ¶ 11, 978 N.E.2d 645. Citing the decision in *Vallero* (*id*. ¶¶ 17-18, 978 N.E.2d 645), the court reversed the defendant's burglary conviction, holding that the defendant did not "remain within" in order to commit a theft because "[h]e entered with authority and did not exceed the physical scope of his authority and left immediately after stealing the fishing reels." *Id*. ¶ 19, 978 N.E.2d 645.

¶ 24   Necessary to the *Vallero* and *McDaniel* decisions was the determination by those courts that an individual who remains within a building with an intent to steal does so *with authority* simply because he is present within the building during normal business hours and has not ventured into an area off limits to the public. We question the soundness of this proposition in light of the supreme court's analysis adopted in *People v. Weaver*, 41 Ill. 2d 434, 438-39, 243 N.E.2d 245, 248 (1968).

¶ 25   In *Weaver*, the defendant was observed by two police officers standing in front of an open vending machine in a laundromat. *Id*. at 435, 243 N.E.2d at 247. Upon frisking the defendant, the officers found more than $50 in coins in his pockets. *Id*. at 435-36, 243 N.E.2d at 247. A

vending-machine key was later found in the front seat of the police car where the defendant had been seated, and a later search of the defendant's companion's vehicle revealed more coins and a plastic bag containing more keys, many of which could be used to open vending machines. *Id*. at 436, 243 N.E.2d at 247. A jury found the defendant guilty of burglary. *Id*. at 435, 243 N.E.2d at 247. On appeal to the supreme court, the defendant argued, "since the laundromat was open to the public at the time in question, he could have entered as a business invitee, and that without convincing proof to the contrary, 'his presence in the store is as consistent with his innocence as with his guilt of the criminal intent at the time of the entry.' " *Id*. at 438, 243 N.E.2d at 248. The *Weaver* court rejected the defendant's argument, concluding that "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open. [Citation.] An entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat." *Id.* at 439, 243 N.E.2d at 248. Thus, the court concluded the evidence was sufficient to establish defendant committed burglary in that he entered without authority with the intent to commit a theft. *Id*., 243 N.E.2d at 248-49.

¶ 26    In *People v. Blair*, 52 Ill. 2d 371, 374, 288 N.E.2d 443, 445 (1972), the supreme court utilized its analysis in *Weaver* to reject the defendants' argument that they were not guilty of burglary simply because they had authority to be at a car wash, a building open to the public. The court in *Blair* determined that since the defendants entered the car wash with the admitted intent to commit a theft, their entry was without authority.

¶ 27    In *People v. Drake*, 172 Ill. App. 3d 1026, 1027-28, 527 N.E.2d 519, 520 (1988), the defendant was convicted of burglary after he entered a grocery store to cash stolen checks. On appeal, the defendant argued "he was not proved guilty of burglary beyond a reasonable doubt because his entry into the grocery store was authorized." *Id*. at 1028, 527 N.E.2d at 520. This court held, pursuant to *Weaver*, that the defendant's entry was without authority even though the building was open to the general public because the "[d]efendant did not have authority to enter the grocery store to commit a forgery." *Id*. (citing *Weaver*, 41 Ill. 2d at 439, 243 N.E.2d at 248).

¶ 28    Clearly, *Weaver* and the above cases which adopted *Weaver*'s analysis all involved the offense of burglary by unlawful entry, whereas the defendant in the present case was convicted of burglary by unlawfully remaining. However, essential to both types of burglary is proof that the defendant's conduct–either in entering a building or in remaining within–was "without authority." 720 ILCS 5/19-1(a) (West 2010). We conclude, pursuant to *Weaver*, that just as a defendant's *entry* is "without authority" if it is accompanied by a contemporaneous intent to steal, so too must a defendant's *remaining* be "without authority" if it also is accompanied by an intent to steal. To determine otherwise would be legally inconsistent with *Weaver*. Accordingly, we choose not to follow *Vallero* and *McDaniel* and instead conclude that a defendant who develops an intent to steal after his entry into a public building may be found guilty of burglary by unlawfully remaining.

¶ 29    We find further support for our conclusion in *People v. Dillavou*, 2011 IL App (2d) 091194, 958 N.E.2d 1118. In *Dillavou*, the defendant was convicted of residential burglary for stealing a camera from inside a house where he was performing work. The Second District Appellate Court rejected the defendant's argument that the residential burglary statute requires proof that a defendant's authority to be in the home of another person was expressly withdrawn before he may be convicted of residential burglary by unlawfully remaining. *Id*. ¶ 16, 958

- 6 -

N.E.2d 1118. The court noted the clear and unambiguous language of the residential burglary statute indicated a defendant is guilty of residential burglary if, while inside a house in which he has the authority to be, he forms the intent to commit a theft therein. *Id.* ¶ 12, 958 N.E.2d 1118. Thus, according to the court in *Dillavou*, a defendant's authority to be in another person's home "is *implicitly* withdrawn when the defendant forms the intent to commit a crime." (Emphasis in original.) *Id.* ¶ 16, 958 N.E.2d 1118.

¶ 30    Burglary is a lesser-included offense of residential burglary (see 720 ILCS 5/19-3(a) (West 2010)). Extending the *Dillavou* court's analysis *vis-à-vis* the residential burglary statute to the burglary statute here, a defendant's authority to be in a public building is implicitly withdrawn once the defendant develops an intent to commit a felony or theft. In other words, the authority to remain in a public building, or any part of the public building, extends only to persons who remain in the building for a purpose consistent with the reason the building is open.

¶ 31    We recognize that *Weaver* contains the following statement: "A criminal intent formulated after a lawful entry will not satisfy the [burglary] statute." *Weaver*, 41 Ill. 2d at 439, 243 N.E.2d at 248. In fact, the *Vallero* court relied upon this line from *Weaver* when it reversed the defendant's burglary conviction in that case. However, the defendant in *Weaver* was charged with, and convicted of, burglary by unlawful entry (as opposed to burglary by unlawfully remaining). Since the State in that case was required to prove the defendant's entry was unlawful, this was an accurate statement of the law as proof of a criminal intent formulated after a lawful entry would be insufficient to sustain the charge. Thus, we do not find the statement in *Weaver* to be inconsistent with our holding here. See also *People v. Boose*, 139 Ill. App. 3d 471, 474, 487 N.E.2d 1088, 1091 (1985) (concluding that "[a] criminal intent formulated after a lawful entry will satisfy the offenses of larceny (retail theft) or burglary by illegally remaining. It will not, however, satisfy the offense of burglary by illegal entry.").

¶ 32    The *Vallero* court also relied on two early supreme court decisions, *People v. Kelley*, 274 Ill. 556, 113 N.E. 926 (1916), and *People v. Myler*, 374 Ill. 72, 28 N.E.2d 83 (1940), in support of its holding that an intent to steal which arises after a defendant's entry will not support a burglary charge. Notably, however, both *Kelley* and *Myler* involved allegations of an unlawful entry. In fact, the burglary statute at the time was limited to circumstances involving an unlawful entry. (The burglary statute was later amended in 1961 such that a defendant could also be charged with an unlawful remaining. Ill. Rev. Stat. 1961, ch. 38, ¶ 19-1.) We do not believe our holding here is inconsistent with these two cases.

¶ 33    Having determined that a defendant's remaining within a building open to the public is "without authority" if it is accompanied by an intent to steal, we turn now to the facts in this case. The evidence at trial established that upon entering Walmart, defendant walked to a display of DVDs located near the store's entrance, randomly selected two DVDs, and then proceeded to the customer service desk, where he conducted a no-receipt return and obtained a gift card for the price of the DVDs. After obtaining the gift card, defendant proceeded to the men's apparel department, where he selected a hat, and then to the shoe department, where he selected a pair of shoes. Defendant removed the tags from the hat and put it on his head. He then removed a Walmart bag from his person and concealed the shoes inside the bag. At some point, defendant also concealed a bottle of Dr. Pepper in the Walmart bag. Defendant then met up with another man with whom he had entered the store, purchased some tank tops and socks with the gift card he had obtained from the return of the DVDs, and walked past the last point of purchase without paying for the hat, the shoes, or the bottle of Dr. Pepper.

¶ 34    Based on the above, the State sufficiently proved defendant remained in Walmart "without authority" as he moved through the store and stole merchandise. During this time, defendant's purpose for being in Walmart was *not* consistent with the purpose for which Walmart was open to the public. Any authority defendant *may* have had to remain in the store was implicitly withdrawn once he formed the intent to steal from Walmart. Therefore, we find the evidence was sufficient to convict defendant of burglary as charged.

¶ 35                    B. Monetary Assessments Imposed by the Circuit Clerk

¶ 36    Next, defendant asserts the $10 probation and court services operations assessment and the $2 State's Attorney records automation assessment must be vacated as they constituted fines and were improperly imposed by the circuit clerk. He asks this court to remand the matter to the trial court for the proper imposition of these "fines" and the requisite *per diem* credit. The State concedes the issue. However, we do not accept the State's concession.

¶ 37    It is well established that "the circuit clerk does not have the power to impose fines." *People v. Montag*, 2014 IL App (4th) 120993, ¶ 37, 5 N.E.3d 246. The central distinction between a fine and a fee rests on how the funds to be collected will be used. *People v. Jake*, 2011 IL App (4th) 090779, ¶ 29, 960 N.E.2d 45. Our supreme court explained the distinction as follows:

> "A 'fee' is defined as a charge that 'seeks to recoup expenses incurred by the state,' or to compensate the state for some expenditure incurred in prosecuting the defendant. [Citation.] A 'fine,' however, is ' "punitive in nature" ' and is ' "a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense." ' [Citation.]" *People v. Graves*, 235 Ill. 2d 244, 250, 919 N.E.2d 906, 909 (2009).

We review *de novo* whether an assessment is a fine or fee. *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 34, 13 N.E.3d 1280.

¶ 38    Here, section 27.3a(1.1) of the Clerks of Courts Act provides, in part, the clerk of "any county that imposes a fee pursuant to subsection 1 of this Section shall also charge and collect an additional $10 operations fee for probation and court services department operations." 705 ILCS 105/27.3a(1.1) (West 2012). The fee "shall be paid by the defendant in any felony, traffic, misdemeanor, local ordinance, or conservation case upon a judgment of guilty or grant of supervision." 705 ILCS 105/27.3a(1.1) (West 2012). This $10 assessment is then deposited into the probation and court services fund under section 15.1 of the Probation and Probation Officers Act (730 ILCS 110/15.1 (West 2012)), which provides that monies from the fund may be dispersed only at the direction of the chief judge for the operation of the probation and court services departments, including supporting juvenile delinquency intervention programs and sex offender evaluation, treatment, and monitoring programs. 705 ILCS 105/27.3a(1.2) (West 2012); 730 ILCS 110/15.1(b), (c), (e), (f) (West 2012). Defendant argues this assessment does not reimburse the State for costs incurred in its prosecution of him since he was not sentenced to probation and is neither a juvenile nor a sex offender. We disagree.

¶ 39    In *Rogers*, this court explained the compensatory nature of the probation operations assistance fee, *i.e.*, "probation and court services operations assessment," must be assessed on a case-by-case basis as the "compensatory nature of the assessment will change in cases where the probation office is not involved in a defendant's prosecution." *Rogers*, 2014 IL App (4th)

121088, ¶ 38, 13 N.E.3d 1280. Based on the specific facts before us in *Rogers*, we determined this assessment was a fee because the defendant was eligible for probation and the probation office conducted a presentence investigation and prepared a report for the trial court's use at the defendant's sentencing. *Id.* ¶ 37, 13 N.E.3d 1280.

¶ 40   Similarly, in this case, the probation office provided services ancillary to the defendant's prosecution as the trial court ordered it to conduct a presentence investigation and prepare a report of its findings for use during defendant's sentencing. Thus, the assessment imposed here is a fee that reimburses the State for costs incurred as the result of prosecuting the defendant. Accordingly, the circuit clerk properly imposed the $10 probation and court services operations assessment.

¶ 41   Next, section 4-2002(a) of the Counties Code provides that a $2 State's Attorney records automation assessment is "to be paid by the defendant on a judgment of guilty or a grant of supervision for a violation of any provision of the Illinois Vehicle Code or any felony, misdemeanor, or petty offense to discharge the expenses of the State's Attorney's office for establishing and maintaining automated record keeping systems." 55 ILCS 5/4-2002(a) (West 2012). In *People v. Warren*, 2014 IL App (4th) 120721, ¶ 108, 16 N.E.3d 13, this court explained this assessment is a fee that reimburses the State's Attorneys for their expenses related to the automated record-keeping systems. Thus, the circuit clerk properly imposed the $2 State's Attorney records automation assessment in this case.

¶ 42                                    III. CONCLUSION

¶ 43   For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2012).

¶ 44   Affirmed.