2018 IL App (4th) 150642

NO. 4-15-0642

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

**FILED**
March 20, 2018
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Macon County |
| TYLER R. BURLINGTON, | ) | No. 14CF1263 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Timothy J. Steadman, |
| | ) | Judge Presiding. |

---

JUSTICE TURNER delivered the judgment of the court, with opinion.
Justices Knecht and DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1 In October 2014, the State charged defendant, Tyler R. Burlington, with one count of burglary (720 ILCS 5/19-1(a) (West 2014)). After a February 2015 trial, a jury found defendant guilty of burglary. Defendant filed a posttrial motion. At a joint April 2015 hearing, the Macon County circuit court denied defendant's posttrial motion and sentenced him to seven years' imprisonment. Defendant filed a motion to reconsider his sentence, which the court granted. After a second sentencing hearing in July 2015, the court sentenced defendant to six years' imprisonment. Defendant appeals, asserting (1) the State failed to prove beyond a reasonable doubt he entered a Menards store without authority, (2) the court erred by allowing his prior burglary convictions to be used as impeachment evidence, (3) he is entitled to two additional days of sentencing credit, and (4) this court should vacate his fines imposed by the circuit clerk and the electronic citation fee. We affirm in part as modified, vacate in part, and

remand the cause with directions.

¶ 2                                                I. BACKGROUND

¶ 3        The State's information alleged that, on October 10, 2014, defendant committed burglary, in that he, without authority, knowingly entered the building of Menards in Forsyth, Illinois. Burglary is a Class 2 felony. 720 ILCS 5/19-1(b) (West 2014). However, based on defendant's criminal history, the parties and the circuit court believed defendant was subject to Class X sentencing. See 730 ILCS 5/5-4.5-95(b) (West 2014).

¶ 4        In February 2015, the circuit court commenced defendant's jury trial on the burglary charge. The State presented the testimony of Donald Langlois, Menards assistant general manager, and Eric Dowdy, deputy sheriff. It also presented footage from the Menards surveillance cameras. Defendant testified on his own behalf. The evidence relevant to the issues on appeal is set forth below.

¶ 5        At around 8 p.m. on October 10, 2014, Langlois was working at Menards. One of his duties was loss prevention, and he was responsible for observing the footage from the 42 surveillance cameras inside Menards. Defendant entered the store, went directly to a digital camera recording system, removed the system from the shelf, walked through the cash register area, and attempted to leave the store. After being stopped by a cashier, defendant attempted to return the item at the service desk for cash. Langlois was watching the attempted return in real time and could hear the conversation between defendant and the employee at the service desk through the microphone located on the service desk. Defendant denied stealing the item. While at the service counter, defendant purchased a screwdriver. While Langlois was on the stand, the State played a video from the Menards surveillance cameras. The video did not have any audio. Langlois identified defendant on the video as the man wearing a Superman sweatshirt. He also

identified defendant in court as the man he saw on the video.

¶ 6 Deputy Dowdy testified he was on duty the night of October 10, 2014, and responded to a call at Menards around 8:47 p.m. Upon arrival, he made contact with defendant, who was wearing a black and teal Superman hoodie, jeans, and a blue stocking cap. Defendant waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and Deputy Dowdy interviewed defendant in the loss prevention room. Defendant told Deputy Dowdy he had entered the store to take an item and return it for United States currency because he owed a man named Tony money for drugs. If he did not pay Tony, he would be physically harmed. Defendant also indicated he had bought a screwdriver while in Menards but that was not the reason why he went there.

¶ 7 Before defendant testified, defense counsel made a motion to exclude defendant's prior convictions for burglary (People v. Burlington, No. 09-CF-731 (Cir. Ct. Macon County)) and retail theft (People v. Burlington, No. 12-CF-1536 (Cir. Ct. Macon County)). Counsel did not challenge the admission of defendant's prior conviction for residential burglary (People v. Burlington, No. 09-CF-1912 (Cir. Ct. Macon County)) and aggravated driving under the influence (DUI) (People v. Burlington, No. 09-CF-865 (Cir. Ct. Macon County)). After hearing the parties' arguments, the court barred the use of defendant's aggravated DUI conviction for impeachment purposes but allowed the admission of the other three convictions.

¶ 8 Defendant testified he had prior convictions for burglary, residential burglary, and retail theft. When he went to Menards on the night in question, his intent was to buy a screwdriver, and he did so. Defendant denied entering the store with an intent to steal. According to defendant, he walked into the store and asked the guy next to the service desk where the screwdrivers were. He then went to the screwdrivers. Thereafter, he began walking around the

store to see what else he wanted. Defendant did not find anything else. Eventually, he picked up the camera and thought he might "take it." Defendant then decided to pay for one item and then act like he was going to walk out. Moreover, he was the one that stopped the woman and asked her where the service desk was. He walked all the way around the store and then went to the service desk. Defendant purchased the screwdriver and talked to them about returning the camera. The service desk never gave him money or a gift card, and he never left the store with a stolen item. Defendant further testified he told Deputy Dowdy he owed someone $200 and decided to take the item to pay his debt when he was already in the store. Defendant testified he made up the story about owing someone money to get out of trouble. Additionally, defendant testified a 20-minute gap existed between the first and the second clip. During that period is when he talked to the man next to the service desk, obtained the screwdriver, and walked around the store.

¶ 9      One of the jury instructions the circuit court gave the jury was Illinois Pattern Jury Instructions, Criminal, No. 3.13 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.13), which states the following: "Evidence of a defendant's previous conviction of an offense may be considered by you only as it may affect his believability as a witness and must not be considered by you as evidence of his guilt of the offense with which he is charged."

¶ 10      At the conclusion of the trial on February 24, 2015, the jury found defendant guilty of burglary. On April 7, 2015, defendant filed a motion for a new trial or for a judgment notwithstanding the verdict, asserting the State failed to prove him guilty beyond a reasonable doubt. At a joint April 10, 2015, hearing, the circuit court denied defendant's posttrial motion and sentenced him as a Class X offender to seven years' imprisonment for burglary. In the written sentencing judgment, the court gave defendant sentencing credit for the period of

October 12, 2014, to April 9, 2015. The court did not impose any fines. On April 23, 2015, defendant filed a notice of appeal, and this court dismissed the appeal at defendant's request (*People v. Burlington*, No. 4-15-0296 (July 1, 2015) (unpublished order dismissing the appeal)).

¶ 11 On May 8, 2015, defendant filed a motion to reconsider his sentence, contending he should not have been sentenced as a Class X offender. The State did not object, and the circuit court allowed the motion. On July 24, 2015, the court held a new sentencing hearing, at which defendant was sentenced on the Class 2 felony. The court sentenced defendant to six years' imprisonment and gave defendant sentencing credit for the period of October 12, 2014, to July 23, 2015. The court again did not impose any fines.

¶ 12 On August 5, 2015, defendant filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. Dec. 11, 2014), but the notice indicated the appealed judgment was only his sentence. On August 19, 2015, defendant filed a timely amended notice of appeal under Illinois Supreme Court Rules 606(d) (eff. Dec. 11, 2014) and 303(b)(5) (eff. Jan. 1, 2015), appealing both his conviction and sentence. Thus, this court has jurisdiction of defendant's appeal under Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013).

¶ 13 II. ANALYSIS

¶ 14 A. Reasonable Doubt

¶ 15 Defendant first asserts the State failed to prove beyond a reasonable doubt he entered Menards without authority, contending the term is ambiguous and this court should take into consideration the same factors considered by our supreme court in *People v. Bradford*, 2016 IL 118674, 50 N.E.3d 1112. The State disagrees. Here, defendant's challenge to his guilty finding is a legal one of statutory construction and not a factual one of sufficiency of the evidence. We review *de novo* a legal question of statutory construction. *Bradford*, 2016 IL

118674, ¶ 15.

¶ 16     The fundamental rule of statutory construction requires courts to ascertain and give effect to the legislature's intent. *Bradford*, 2016 IL 118674, ¶ 15. The statutory language, given its plain and ordinary meaning, best indicates the legislature's intent. *Bradford*, 2016 IL 118674, ¶ 15. Courts must construe the statute's words and phrases in light of other relevant provisions and not in isolation. *Bradford*, 2016 IL 118674, ¶ 15. Additionally, they "may consider the reason for the law, the problems to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *Bradford*, 2016 IL 118674, ¶ 15. Where the language is plain and unambiguous, it must be applied without resort to further aids of statutory construction. *Bradford*, 2016 IL 118674, ¶ 15. However, when the language is ambiguous, courts may consider external sources, such as legislative history, to discern the legislature's intent. *Bradford*, 2016 IL 118674, ¶ 15.

¶ 17     Section 19-1(a) of the Criminal Code of 2012 (720 ILCS 5/19-1(a) (West 2014)) provides, in part, the following: "A person commits burglary when without authority he or she knowingly enters or without authority remains within a building, *** or any part thereof, with intent to commit therein a felony or theft." As our supreme court has explained, the burglary statute provides for two ways to commit the offense of burglary: "(1) by entering without authority and with the intent to commit a felony or theft or (2) by remaining without authority and with the intent to commit a felony or theft." *Bradford*, 2016 IL 118674, ¶ 13 (citing 720 ILCS 5/19-1(a) (West 2012)). In this case, defendant was convicted of the first type of burglary, in that he, without authority, knowingly entered Menards with the intent to commit a theft therein. However, defendant's argument relies heavily on our supreme court's decision in *Bradford*, where it addressed what it meant "to remain without authority in a public place of

business," which is the second type of burglary. *Bradford*, 2016 IL 118674, ¶ 14.

¶ 18     Defendant contends the "without authority" language in the first type of burglary is ambiguous like the supreme court found with the second type of burglary in *Bradford*. He further asserts an intent to steal does not remove one's authority to be in the store. However, the *Bradford* court did not find the "without authority" language ambiguous. It simply concluded the defendant presented the only reasonable reading of the burglary statute. *Bradford*, 2016 IL 118674, ¶ 25. Moreover, unlike the "without authority" language in the second type of burglary, which the supreme court had not interpreted before the *Bradford* decision, our supreme court has already interpreted the meaning of the "without authority" language for the first type of burglary.

¶ 19     Fifty years ago, in *People v. Weaver*, 41 Ill. 2d 434, 243 N.E.2d 245 (1968), our supreme court addressed the "without authority" language of the first type of burglary. There, the police had observed the defendant in a self-service laundromat standing near a vending machine, of which the door was open. *Weaver*, 41 Ill. 2d at 435. When they frisked the defendant for weapons, they discovered more than $50 in coins in his pocket. *Weaver*, 41 Ill. 2d at 435-36. The defendant was found guilty of burglary, possession of burglary tools, and theft. *Weaver*, 41 Ill. 2d at 435. On appeal, the defendant argued the State's evidence failed to establish the crime of burglary beyond a reasonable doubt because the laundromat was open to the public at the time in question, he could have entered as a business invitee, and his presence in the laundromat is as consistent with his innocence as with his guilt regarding criminal intent at the time of his entry. *Weaver*, 41 Ill. 2d at 438.

¶ 20     The *Weaver* court disagreed with the defendant's contention. It explained the statute required an entry that is (1) without authority and (2) with the intent to commit a felony or theft. *Weaver*, 41 Ill. 2d at 439. A criminal intent formulated after a lawful entry does not satisfy

the statute. *Weaver*, 41 Ill. 2d at 439. However, the "authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open." *Weaver*, 41 Ill. 2d at 439. On the facts of that case, the supreme court found the "entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat." *Weaver*, 41 Ill. 2d at 439. The evidence defendant and his codefendant had no laundry, could have used a telephone outside the building, and had keys to the vending machine inside vehicles belonging to defendant and his codefendant was sufficient for a jury to find, beyond a reasonable doubt, defendant entered the laundromat with the intent to commit a theft. *Weaver*, 41 Ill. 2d at 439.

¶ 21 Our supreme court followed its holding in *Weaver* in the case of *People v. Blair*, 52 Ill. 2d 371, 374, 288 N.E.2d 443, 445 (1972), where it rejected the two defendants' argument a car wash was a public place and, thus their entry was not "without authority." Numerous appellate court cases have also followed *Weaver*'s holding that entry of a public building with the intent to commit theft constitutes an entry "without authority." See *People v. Gharrett*, 2016 IL App (4th) 140315, ¶ 53, 53 N.E.3d 332 (collecting cases). One such case with facts similar to those before us is *People v. Rudd*, 2012 IL App (5th) 100528, ¶ 13, 970 N.E.2d 580.

¶ 22 In *Rudd*, 2012 IL App (5th) 100528, ¶ 2, the State charged the defendant with retail theft (720 ILCS 5/16A-3(a) (West 2008)) and the first type of burglary (720 ILCS 5/19-1(a) (West 2008)) for stealing two vacuum cleaners from a Walmart. A jury found the defendant guilty of both charges. *Rudd*, 2012 IL App (5th) 100528, ¶ 10. On appeal, the defendant argued the State's evidence was insufficient to prove him guilty of burglary. *Rudd*, 2012 IL App (5th) 100528, ¶ 11. Following the holding in *Weaver*, the *Rudd* court found the question was whether the evidence was sufficient to allow a rational jury to reasonably infer the defendant intended to

commit the theft when he entered the store. *Rudd*, 2012 IL App (5th) 100528, ¶ 14. The court concluded the evidence was sufficient to prove beyond a reasonable doubt the defendant entered the Walmart with the intent to commit the theft where the facts showed the defendant and another man carefully orchestrated a plan to steal the two vacuum cleaners. *Rudd*, 2012 IL App (5th) 100528, ¶ 16.

¶ 23        As stated, defendant's argument relies on our supreme court's decision in *Bradford*. There, the court held "an individual commits burglary by remaining in a public place only where he exceeds his physical authority to be on the premises." *Bradford*, 2016 IL 118674, ¶ 31. Under that definition, burglary by remaining includes situations in which an individual enters a public building lawfully but, in order to commit a theft or felony, the individual does one of the following: "(1) hides and waits for the building to close [citation], (2) enters unauthorized areas within the building [citations], or (3) continues to remain on the premises after his authority is explicitly revoked." *Bradford*, 2016 IL 118674, ¶ 31. The court further explained "an individual who enters a building lawfully, shoplifts merchandise within areas which are open to the public, then leaves during business hours, is guilty of ordinary retail theft." *Bradford*, 2016 IL 118674, ¶ 31.

¶ 24        In reaching the aforementioned conclusion, the *Bradford* court rejected the State's argument that was adopted by this court. Citing *Weaver*, this court concluded that, "just as a defendant's entry is 'without authority' if it is accompanied by a contemporaneous intent to steal, so too must a defendant's remaining be 'without authority' if it also is accompanied by an intent to steal." (Emphases omitted.) *People v. Bradford*, 2014 IL App (4th) 130288, ¶ 28, 21 N.E.3d 753. We found that, during defendant's multiple acts of shoplifting, his purpose for being in the store was not consistent with the purpose for which the store was open to the public. *Bradford*,

2014 IL App (4th) 130288, ¶ 34. Thus, this court concluded the evidence presented at trial the defendant "remained" in the store with the intent to commit a theft was sufficient in itself to convict the defendant of the second type of burglary. *Bradford*, 2014 IL App (4th) 130288, ¶ 34.

¶ 25        The supreme court also found this court's holding conflicted with the legislative intent behind the enactment of the retail theft statute. *Bradford*, 2016 IL 118674, ¶ 27. It noted this court's conclusion a defendant may be found guilty of burglary where he develops an intent to steal after his entry into a public building "encompasses nearly all cases of retail theft, effectively negating the retail theft statute." *Bradford*, 2016 IL 118674, ¶ 27. However, the retail theft statute was enacted for the purpose of combating the growing problem of retail theft in Illinois and, unlike burglary, "takes into account various factors, including the value of the property taken, a defendant's prior record, and how the property was acquired." *Bradford*, 2016 IL 118674, ¶ 27.

¶ 26        Last, the supreme court found our interpretation of the "remaining within" language was at odds with the historical development of the burglary statute. *Bradford*, 2016 IL 118674, ¶ 29. It concluded "burglary by remaining" was intended to incorporate the crime of "burglar found in building." *Bradford*, 2016 IL 118674, ¶ 29. The supreme court further found the "burglar found in building" provision necessarily implied that the building or area where the defendant was found or discovered was closed to him or the public. *Bradford*, 2016 IL 118674, ¶ 29.

¶ 27        We find the supreme court's decision in *Bradford* does not affect the holding of *Weaver* and its progeny. While it rejected the State's interpretation of the second type of burglary based on *Weaver*'s holding, the decision in no way indicated *Weaver* was no longer good law for the first type of burglary. The supreme court specifically only addressed the second type of

burglary. The *Bradford* decision did not state an entry into a public building with a criminal intent is now a lawful entry. Additionally, unlike the second type of burglary, the "burglary found in building" provision's development over time does not impact the first type of burglary.

¶ 28       As to the impact of the enactment of the retail theft statute on the first type of burglary, our supreme court has previously recognized a defendant can be convicted of the first type of burglary and retail theft for one incident. In *People v. Miller*, 238 Ill. 2d 161, 163-64, 938 N.E.2d 498, 500 (2010), the defendant was charged with the first type of burglary, retail theft, and aggravated assault related to his entry and subsequent actions at a Walgreens. A jury found defendant guilty of each charge. *Miller*, 238 Ill. 2d at 164. On appeal, defendant contended his convictions for both burglary and retail theft violated the one act, one crime rule because retail theft is a lesser included offense of burglary. *Miller*, 238 Ill. 2d at 165. The supreme court disagreed and found both convictions could stand. *Miller*, 238 Ill. 2d at 176. Specifically, the *Miller* court found the following:

> "Not all of the elements of retail theft are included in the offense of burglary and retail theft contains elements that are not included in burglary. Retail theft requires a 'taking' whereas burglary does not. Likewise, retail theft requires that the defendant fail to pay for the merchandise. Burglary does not. Lastly, the requisite intents of each offense are different. Thus, it is possible to commit burglary without necessarily committing retail theft." *Miller*, 238 Ill. 2d at 176.

The *Miller* decision indicates the first type of burglary and retail theft are two separate offenses that can both stand for the entry and later taking committed during the same incident, undermining the assertion the first type of burglary eviscerates the retail theft statute.

¶ 29       Moreover, applying defendant's interpretation that the intent to commit a theft

does not remove one's authority to enter a retail store eliminates many types of burglary that do not involve retail theft. For example, in *People v. Drake*, 172 Ill. App. 3d 1026, 1028, 527 N.E.2d 519, 520 (1988), the defendant argued he was not proved guilty of burglary beyond a reasonable doubt because his entry into the grocery store was authorized. Citing *Weaver*, the reviewing court disagreed with the defendant, finding defendant did not have the authority to enter the grocery store with the intent to commit a forgery and thus his burglary conviction was proper. *Drake*, 172 Ill. App. 3d at 1028.

¶ 30    Additionally, if the legislature did not agree with the supreme court's interpretation of the "without authority" language as to the first type of burglary and the Illinois courts' application of that language to incidents where the person entered a business with the intent to commit a retail theft, it could have amended the burglary statute to eliminate that application. It has not done so. Illinois courts have applied *Weaver*'s interpretation of the first type of burglary repeatedly and consistently for 50 years, and thus the legislature has had ample time to contravene that interpretation. This consistent judicial interpretation of the "without authority" language in the first type of burglary is considered a part of the statute until the legislature amends it contrary to that interpretation. See *People v. Woodard*, 175 Ill. 2d 435, 444, 677 N.E.2d 935, 940 (1997). As stated, the *Bradford* decision specifically addressed only the second type of burglary and thus is not the prevailing construction of the "without authority" language for the first type of burglary.

¶ 31    Accordingly, we reject defendant's argument and continue to follow *Weaver*'s holding that entry of a public building with the intent to commit theft constitutes an entry "without authority."

¶ 32    We recognize our holding is inconsistent with the Third District's holding in

- 12 -

*People v. Johnson*, 2018 IL App (3d) 150352, ¶ 35, in which it concluded *Bradford*'s physical authority test applied to all retail theft cases, regardless of when the defendant formed the intent to shoplift. As previously explained, the supreme court in *Bradford* was very clear it was only addressing the second type of burglary and not both types. Moreover, the *Johnson* decision appears to find the legislature's enactment of the retail theft statute in 1975 implicitly removes retail theft from the "intent to commit therein a felony or theft" language of the burglary statute. See *Johnson*, 2018 IL App (3d) 150352, ¶ 33. However, the burglary statute and the *Weaver* decision existed before the enactment of the retail theft statute, and the legislature has yet to amend the burglary statute to state the exception found in *Johnson*. In construing a statute, courts cannot read words into the statute that are not there. *People v. Sedlacek*, 2013 IL App (5th) 120106, ¶ 28, 986 N.E.2d 1281. Additionally, we disagree with *Johnson*'s focus on prosecutorial discretion. "Generally, prosecutorial discretion is a valuable aspect of the criminal justice system." *People v. Christy*, 139 Ill. 2d 172, 180, 564 N.E.2d 770, 774 (1990). The fact that more than one offense covers a defendant's course of conduct has never been a valid reason for removing the discretion of the prosecutor to decide which offense, if any, to charge. Thus, we disagree with *Johnson*'s statement "[c]ourts should not interpret criminal statutes to provide prosecutors unbridled discretion to arbitrarily charge some shoplifters with Class 2 felony burglary and others with Class A misdemeanor retail theft under similar circumstances." *Johnson*, 2018 IL App (3d) 150352, ¶ 30. Concerns over the exercise of prosecutorial discretion cannot alter the plain language of a statute.

¶ 33                                B. Impeachment with Prior Convictions

¶ 34        Defendant next contends the circuit court erred by allowing him to be impeached with his prior residential burglary and burglary convictions. Defendant acknowledges he failed to

raise this issue in his posttrial motion, and thus he has forfeited it. See *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988) (to preserve an issue for review, the defendant must object at trial and raise the issue in a written posttrial motion). He requests we review this issue under the plain-error doctrine. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The State asserts defendant acquiesced to the court's use of the residential burglary conviction and cannot challenge it on appeal. Regardless, the State asserts no error occurred based on the court's allowing defendant to be impeached with his prior convictions.

¶ 35      The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010).

We begin our plain-error analysis by first determining whether any error occurred at all. *Sargent*, 239 Ill. 2d at 189. If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90. Under both prongs, the defendant bears the burden of persuasion. *Sargent*, 239 Ill. 2d at 190.

¶ 36      In *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971), our supreme court addressed the admissibility of evidence of a witness's prior conviction to impeach the

witness's credibility. There, our supreme court held evidence of a witness's prior conviction is admissible to attack the witness's credibility where:

> "(1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment; (2) less than 10 years has elapsed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later; and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice." *People v. Mullins*, 242 Ill. 2d 1, 14, 949 N.E.2d 611, 619 (2011) (citing *Montgomery*, 47 Ill. 2d at 516).

The third factor requires the circuit court to conduct a balancing test, weighing the prior conviction's probative value against its potential prejudice. *Mullins*, 242 Ill. 2d at 14. In performing the balancing test, the court should consider, *inter alia*, the following: "the nature of the prior conviction, the nearness or remoteness of that crime to the present charge, the subsequent career of the person, the length of the witness' criminal record, and whether the crime was similar to the one charged." *Mullins*, 242 Ill. 2d at 14-15. The determination of whether a witness's prior conviction is admissible for impeachment purposes rests within the circuit court's sound discretion. *Mullins*, 242 Ill. 2d at 15. A circuit court "abuses its discretion when its decision is 'fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it.' " *People v. Kladis*, 2011 IL 110920, ¶ 23, 960 N.E.2d 1104 (quoting *People v. Ortega*, 209 Ill. 2d 354, 359, 808 N.E.2d 496 (2004)).

¶ 37 Here, both of defendant's convictions meet the first two prongs of the test, and thus only the third prong is at issue. Defendant asserts that, since he could be impeached with the retail theft conviction, the circuit court abused its discretion by also admitting the burglary and

residential burglary conviction because they are the same offense for which he was on trial. In support of his argument, he cites *People v. Encalado*, 2017 IL App (1st) 142548, 73 N.E.3d 562, *appeal allowed*, No. 122059, 84 N.E.3d 365 (Ill. May 24, 2017). There, the reviewing court noted the following: " 'Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that if he did it before he probably did so this time. As a general guide, those convictions which are for the same crime should be admitted sparingly ***.' " (Internal quotation marks omitted.) *Encalado*, 2017 IL App (1st) 142548, ¶ 23 (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)). However, the reviewing court found the circuit court did not abuse its discretion by allowing the defendant, who was on trial for three counts of aggravated criminal sexual assault, to be impeached with his prior conviction for predatory criminal sexual assault. *Encalado*, 2017 IL App (1st) 142548, ¶ 25. The State disagrees with defendant's argument and contends defendant acquiesced to defendant's impeachment with his prior residential burglary conviction. We need not address whether defendant acquiesced in his impeachment with his prior residential burglary conviction because we find the court did not abuse its discretion by admitting defendant's prior convictions for residential burglary and burglary.

¶ 38      This case is similar to our supreme court's decision in *People v. Atkinson*, 186 Ill. 2d 450, 461, 713 N.E.2d 532, 537 (1999), where it found the circuit court did not abuse its discretion by holding the defendant's two prior burglary convictions could be admitted for purposes of impeachment during the defendant's burglary trial. Addressing the third prong of the *Montgomery* test, our supreme court noted defendant's testimony was his entire defense. *Atkinson*, 186 Ill. 2d at 461-62. Thus, the defendant's credibility was the central issue, and his

prior convictions were crucial in measuring the defendant's credibility. *Atkinson*, 186 Ill. 2d at 462. The supreme court did emphasize circuit courts should be cautious in admitting prior convictions for the same crime as the crime charged. *Atkinson*, 186 Ill. 2d at 463. However, "similarity alone does not mandate exclusion of the prior conviction." *Atkinson*, 186 Ill. 2d at 463. Additionally, the supreme court noted the circuit court "strictly limited the use of the prior convictions by providing the jury with an instruction limiting their evidentiary use to impeachment." *Atkinson*, 186 Ill. 2d at 463.

¶ 39        Here, the record shows the circuit court conducted the balancing test set forth in the third prong of the *Montgomery* test and found the probative value of the prior residential burglary and burglary convictions outweighed the danger of unfair prejudice. Like in *Atkinson*, defendant's testimony was his sole defense, and thus defendant's prior convictions were crucial in measuring his credibility. See *Atkinson*, 186 Ill. 2d at 461-62. Neither convictions were remote in time to the offenses at issue in this case. Additionally, burglary is considered a crime of dishonesty. *People v. Paul*, 304 Ill. App. 3d 404, 410, 710 N.E.2d 499, 503 (1999). The existence of two similar convictions does not in itself make the convictions' probative value outweighed by prejudice. See *Atkinson*, 186 Ill. 2d at 461 (two prior burglary convictions in a burglary trial); *People v. Blair*, 102 Ill. App. 3d 1018, 1026-27, 429 N.E.2d 1375, 1381 (1981) (four prior burglary convictions in a burglary trial). Additionally, defendant's retail theft conviction was similar to the burglary charge in this case, and thus this is not a situation where other dissimilar prior convictions of dishonesty could have been used to impeach defendant. Moreover, as in *Atkinson*, the circuit court gave IPI Criminal No. 3.13, which stated defendant's prior convictions were to be considered only as to defendant's credibility and not as evidence of defendant's guilt of the charged offenses.

¶ 40    Accordingly, we find the circuit court did not abuse its discretion by allowing defendant's impeachment with his prior burglary and residential burglary convictions.

¶ 41                                C. Sentencing Credit

¶ 42    Defendant further contends he is entitled to two additional days of sentencing credit because he was arrested on October 10, 2014, and the circuit court only awarded him sentencing credit for the period of October 12, 2014, to July 23, 2015. The State concedes the issue.

¶ 43    Section 5-4.5-100(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-100(b) (West 2014)) addresses sentence credit and provides, in pertinent part, the following: "[T]he offender shall be given credit on the determinate sentence or maximum term and the minimum period of imprisonment for the number of days spent in custody as a result of the offense for which the sentence was imposed." This court has explained, "[a] defendant should receive credit against his sentence for any part of a day that he is held in custody." *People v. Peterson*, 372 Ill. App. 3d 1010, 1019, 868 N.E.2d 329, 336 (2007). We agree with the parties the record shows defendant was arrested on October 10, 2014, and the record does not reveal defendant posted bond. Thus, the sentencing judgment should show defendant is entitled to credit for time served from October 10, 2014, to July 23, 2015. Accordingly, we remand the case for an amended sentencing judgment.

¶ 44                                D. Fines and Fees

¶ 45    Last, defendant challenges the fines imposed in his case, as well as the $5 electronic citation fee. The State agrees with defendant's contentions.

¶ 46    "Although circuit clerks can have statutory authority to impose a fee, they lack authority to impose a fine, because the imposition of a fine is exclusively a judicial act."

(Emphases omitted.) *People v. Smith*, 2014 IL App (4th) 121118, ¶ 18, 18 N.E.3d 912. Thus, "any fines imposed by the circuit clerk are void from their inception." *People v. Larue*, 2014 IL App (4th) 120595, ¶ 56, 10 N.E.3d 959. A void judgment can be challenged " 'at any time or in any court, either directly or collaterally.' " *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103, 776 N.E.2d 195, 201 (2002) (quoting *Barnard v. Michael*, 392 Ill. 130, 135, 63 N.E.2d 858, 862 (1945)).

¶ 47 We find the following assessments are fines: (1) the $15 State Police operations assessment (labeled "State Police Ops") (*People v. Millsap*, 2012 IL App (4th) 110668, ¶ 31, 979 N.E.2d 1030); (2) the $50 court finance assessment (labeled "Court") (*Smith*, 2014 IL App (4th) 121118, ¶ 54); (3) the $10 arrestee's medical costs assessment (labeled "Medical Costs") (*Larue*, 2014 IL App (4th) 120595, ¶ 57); (4) the $100 assessment under the Violent Crime Victims Assistance Act (labeled "Violent Crime") (*People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 142, 55 N.E.3d 117); (5) the $4.75 drug court program assessment (*Warren*, 2016 IL App (4th) 120721-B, ¶ 138); (6) the $28.50 Children's Advocacy Center assessment (labeled "Child Advocacy Fee") (*People v. Jones*, 397 Ill. App. 3d 651, 660-61, 921 N.E.2d 768, 775 (2009)); (7) the $5 youth diversion assessment (labeled "Youth Diversion") (*People v. Beasley*, 2017 IL App (4th) 150291, ¶ 44, 85 N.E.3d 568); (8) the juvenile expungement assessment, which is listed on the clerk's printout as a $12 assessment for the Clerk Operations and Administrative Fund (labeled "Clerk Op Add-Ons"), a $10 assessment for the State's Attorney Office Fund (the $10 assessment for the State's Attorney is included in the $40 charge listed for the "State's Atty" on the clerk's printout), and a $10 assessment for the State Police Services Fund (labeled "State Police Svcs") (*Warren*, 2016 IL App (4th) 120721-B, ¶ 134); (9) $9.50 "Nonstandard" assessment (*People v. Williams*, 2013 IL App (4th) 120313, ¶ 22, 991 N.E.2d 914); and (10) the

$20 traffic/criminal surcharge (labeled "Lump Sum Surcharge") (*Warren*, 2016 IL App (4th) 120721-B, ¶ 129). Since the fines were not imposed by the circuit court, they are void and must be vacated.

¶ 48    Additionally, defendant argues the $5 electronic citation fee ("E-Citation Fee") does not apply to this case. The State concedes the issue. Section 27.3e of the Clerks of Courts Act (705 ILCS 105/27.3e (West 2014)) provides the $5 electronic citation fee "shall be paid by the defendant in any traffic, misdemeanor, municipal ordinance, or conservation case upon a judgment of guilty or grant of supervision." Thus, we agree with the parties the $5 electronic citation fee does not apply to defendant's criminal conviction and vacate the fee.

¶ 49                                    III. CONCLUSION

¶ 50    For the reasons stated, we vacate the improperly imposed fines set forth *supra* ¶ 47 and the $5 electronic citation fee, affirm as modified the Macon County circuit court's judgment in all other respects, and remand the cause with directions. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 51    Affirmed in part as modified and vacated in part; cause remanded with directions.

- 20 -