NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190691-U

NO. 4-19-0691

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 17, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| SHOEN RUSSELL, | ) | No. 18CF1198 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Roger B. Webber, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) By refusing to admit into evidence the prior consistent statement of defendant to his wife, the circuit court did not abuse its discretion. (2) The court did not abuse its discretion by admitting defendant's prior felony conviction. (3) The circuit court's findings the decedent's identifications of defendant were dying declarations were not against the manifest weight of the evidence, and it was not an abuse of discretion to admit the identifications as dying declarations or as excited utterances.

¶ 2     The State charged, in three variations, that on August 23, 2018, defendant, Shoen Russell, committed first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2016)), and in doing so, personally discharged a firearm proximately causing the death of the victim (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2016)). A jury found defendant guilty, and the circuit court of Champaign County sentenced defendant to imprisonment for 65 years. Defendant filed a posttrial motion and a motion to reconsider his sentence, both denied by the court. Defendant appeals on three grounds.

¶ 3 Defendant first contends the circuit court abused its discretion by failing to admit a recorded conversation with his wife while he was in jail awaiting trial, wherein defendant asserted he did not mean to kill the victim when he discharged his firearm. Defendant pursued a theory of self-defense at the trial, and sought to introduce his statement to rebut the State's alleged suggestion defendant had fabricated that he acted in self-defense. We find no abuse of discretion.

¶ 4 Second, defendant argues the circuit court should not have admitted his prior conviction for aggravated battery to a peace officer, a felony. Though the battery offense occurred more than 10 years prior to the instant offense, defendant was released from custody within 10 years. Defendant posits the prejudice resulting from the admission of this conviction outweighed the probative value. Admitting the conviction was not an abuse of discretion.

¶ 5 Lastly defendant contends the circuit court should not have admitted the statement of the victim, identifying defendant as the one who shot him, as a dying declaration or an excited utterance. The circuit court's determination the victim's statements were dying declarations was not against the manifest weight of the evidence, nor was it an abuse of discretion to admit the statements as dying declarations or excited utterances.

¶ 6 Therefore, we affirm.

¶ 7 I. BACKGROUND

¶ 8 On August 23, 2018, Darin Mitchell (Mitchell) was shot at an American Legion in Champaign, Illinois. Mitchell died later that evening from the gunshot wound at Carle Foundation Hospital (Carle). The State charged defendant with several counts of first degree murder on August 24, 2018.

¶ 9 Both the State and the defendant filed motions to admit and exclude, respectively, defendant's 2007 felony aggravated battery conviction. The circuit court, after argument on the

motions, granted the State's motion to admit the conviction. The court subsequently admitted the conviction at the jury trial. Defendant concedes his prison term ended within 10 years of the date of trial, but argued below, and does herein, that the prejudicial effect of the conviction outweighs its probative value.

¶ 10    The parties also filed motions directed to the two statements made by Mitchell identifying defendant as the one who shot him. The State asserted, and now contends, the statements were admissible as either dying declarations or excited utterances. Specifically, Mitchell made one statement in the ambulance on the way to Carle and the other while at Carle.

¶ 11    The State exhibited to the circuit court body camera recordings of both statements. In the ambulance, one of the ambulance personnel asked Mitchell if he had any idea who shot him. Mitchell answered immediately, "Yeah. Shoen Russell." During the ambulance ride, Mitchell stated several times that he could not breathe, and the video suggests Mitchell was having trouble breathing. One of the treaters advised as well during the ride that Mitchell did not have enough oxygen in his blood. The urgent manner utilized by the personnel treating Mitchell also reflected the gravity of his injuries, as did that several were attending to him. Finally, Mitchell was losing copious blood from both the entry and exit wounds, and pulling his mask off in order to breathe.

¶ 12    As for the hospital, when a detective introduced himself to Mitchell at Carle, Mitchell blurted "Shoen Russell shot me." Medical personnel at Carle continued to attend to Mitchell, and he was still having difficulty breathing. As well Mitchell asked several times for sedation. One treater noted "there's bleeding—copious amounts." From the emergency room, personnel took Mitchell to surgery which did not end successfully.

¶ 13    Subsequent to argument on the motions, the circuit court determined to admit Mitchell's identification statements as dying declarations as follows:

"It's clear the defendant was struggling to breathe. It was observed in the presence out loud multiples times that he was bleeding profusely. He repeatedly asked the medical personnel to let him get to a position where he could breathe. It's not unreasonable at all to conclude from the totality of those circumstances that he believed death was imminent."

¶ 14 The circuit court also ruled both statements admissible as excited utterances, commenting:

"What we have is he was shot. Within some relatively short period of time, he's being transported to a hospital in an ambulance, and he's asked who did this or what happened, and he replied, "Shoen Russell shot me" in the ambulance, so I— and it's not just the amount of time between the incident and the question, but the instant response to the question that reflects the lack of time to fabricate a response. The statement clearly relates to the circumstances of the startling occurrence."

¶ 15 The jury trial began May 14, 2019, during which the State called nine witnesses. Among these was Richard Davis (Davis), the manager of the American Legion where the shooting occurred. Davis testified defendant got in Mitchell's face, causing Mitchell to take a swing at defendant. Davis recounted defendant fell backwards, and while doing so, pulled a pistol and shot Mitchell once.

¶ 16 Mitchell's landlord testified she saw defendant approach Mitchell, defendant swing at Mitchell, and Mitchell swing back. The landlord recalled similarly defendant shot Mitchell after Mitchell tried to hit defendant.

¶ 17 Steve Woodward (Woodward) testified he was at the American Legion, and was acquainted with both defendant and Mitchell. Woodward heard defendant and decedent yelling at

each other. Defendant pushed Mitchell, who then punched defendant. Defendant fell backwards, pulled his weapon, and shot Mitchell. Woodward recounted he told one of the detectives that evening that Mitchell hit defendant in the eye when defendant approached Mitchell. As well, he testified he did not initially tell law enforcement defendant pushed Mitchell.

¶ 18 Brad Atkinson (Atkinson), a police officer, testified he rode in the ambulance with Mitchell. He was wearing a body camera, which made the recording played to the jury depicting the paramedic asking Mitchell if he knew who shot him. As noted, Mitchell identified defendant as the one who shot him.

¶ 19 Detective Robert DeLong (DeLong) testified he met Mitchell at the ambulance on arrival at Carle, and followed Mitchell to his room. DeLong's body camera recorded his conversation with Mitchell. DeLong testified he asked Mitchell his name, which the latter provided. While DeLong was introducing himself, Mitchell stated "Shoen Russell shot me." The jury then viewed the camera recording. DeLong also noted Mitchell did not mention any confrontation with defendant prior to the shooting.

¶ 20 DeLong's testimony concluded the State's case-in-chief.

¶ 21 Defendant called his sister, Tamika Russell (Russell), to testify. Russell drove defendant and others to the American Legion. She did not observe defendant consume any alcohol that evening, or notice any signs of intoxication.

¶ 22 Detective Amy Petrilli (Petrilli) testified she interviewed Davis, the American Legion manager who testified earlier, after they viewed the facility's video. Davis did not identify defendant by name, and told Petrilli the shooting happened so fast that he was confused.

¶ 23 Police officer John Nickell (Nickell) also testified in defendant's case. Nickell spoke with Davis on arrival who told Nickell that Mitchell said something to defendant who

immediately shot Mitchell. Nickell reported Davis's description of the shooter changed after seeing the facility's surveillance video.

¶ 24　　　　Defendant testified in his own defense. He offered initially that he was convicted of aggravated battery in 2011, which was a felony. Defendant testified that as he approached a crowd at the American Legion he was suddenly struck by Mitchell. Defendant stated he had no prior interaction with Mitchell that evening. Defendant thought Mitchell had something in his hand when he hit defendant, as he was hit hard which caused him to fall backwards. Defendant saw Mitchell approach him again, was afraid of him given Mitchell's first punch, so defendant shot Mitchell. Defendant testified he carried a gun to protect himself as he has gotten older. Defendant testified he did not intend to kill Mitchell, and thought of Mitchell's family as his own.

¶ 25　　　　Defendant reiterated on cross-examination he only shot Mitchell because he was fearful after Mitchell hitting him. Defendant only wanted Mitchell to stop the attack. For this reason, defendant aimed for Mitchell's leg. The State asked defendant "So, you just tearfully said you didn't want to kill him. But *** you just walked away; didn't you?" The State also asked defendant "But now you're crying and saying you didn't want to kill him. But at the time you could have helped him, you walked away; didn't you?"

¶ 26　　　　At the conclusion of defendant's testimony, defendant moved to admit a recording of a phone call defendant had with his wife while he was in pretrial detention. The circuit court previously found the recording admissible at the request of the State pursuant to a motion *in limine*. Therein, defendant states that he did not try to kill Mitchell, that it was not his intention, and that he did not want Mitchell to die. Defendant argued the statements were consistent with his trial testimony, and would serve to rebut the State's suggestion during the cross-examination of defendant that defendant had fabricated his self-defense theory.

¶ 27　　　　In pertinent part, defendant argued:

　　　　"Under Rule 613(c), I am allowed to rebut an express or implied charge on cross-examination that the witness is motivated or has been influenced to testify falsely or that his testimony is a recent fabrication. Evidence is, however, admissible that he told the same story before the motive or influence came into existence or before the time of the alleged fabrication.

　　　　So, Mr. Larson is insinuating that today is the first time Mr. Russell has indicated he had no intent to kill Darin Mitchell. That is not true. And I can rehabilitate my client through the use of his prior consistent statement for rehabilitation purposes under Rule 613(c)."

¶ 28　　　　In response to the circuit court's questioning, defendant clarified that the motivation or influence to testify falsely the court should consider as the cause under the rule to admit the recording was the use of the word "today" by the State in the cross-examination of defendant.

¶ 29　　　　The circuit court denied defendant's motion to admit the recording, noting:

　　　　"I think the—assuming that Mr. Larson is implying that this is a recent fabrication, it would seem to me the motive or the influence would be either the charge—the criminal trial or the fact that he was arrested and charged with the offense of murder."

¶ 30　　　　During closing arguments, the State told the jury defendant offered a different version "today," twice referenced defendant's "motivation" to lie, and suggested defendant made up the story about Mitchell hitting defendant.

¶ 31　　　　The jury returned a guilty verdict for first degree murder.

¶ 32 Defendant filed a motion to set aside the verdict and a motion for a new trial. The motion asserted as grounds (1) the admission of the aggravated battery conviction, (2) the admission of Mitchell's identification of defendant as dying declarations or exited utterances, (3) the denial of defendant's motion during trial to admit body camera footage to impeach two of the officers who testified they had not formed an opinion as to who the aggressor was, and (4) the denial of defendant's request to admit the recording of the jail call with his wife. The circuit court denied the motion at the sentencing hearing, and sentenced defendant to 40 years in addition to 25 years for the firearm enhancement, for a total of 65 years' imprisonment.

¶ 33 Defendant filed a motion to reconsider the sentence, which the circuit court denied. The motion noted that as defendant's age was then 49 years, the sentence amounted to a life sentence. As such, defendant argued the sentence was excessive and would cause extreme hardship for his family.

¶ 34 From the order denying the motion to reconsider the sentence, defendant appealed.

¶ 35 II. ANALYSIS

¶ 36 A. The Refusal to Admit the Prior Consistent Statement Was Not Error

¶ 37 Defendant argues the circuit court should have admitted the recorded prior statement to his wife that he did not mean to kill Mitchell to rebut what defendant characterizes as the State's implication self-defense was defendant's recent fabrication. Defendant also argues the court utilized the incorrect standard.

¶ 38 We review evidentiary rulings for an abuse of discretion. *People v. Appelt*, 2013 IL App (4th) 120394, ¶ 85. A ruling "is an abuse of discretion only if it is illogical, arbitrary, or contrary to law." *Id.* ¶ 86. "In other words, a decision is an abuse of discretion only if no reasonable person could agree with the decision." *Id.*

¶ 39    Generally a prior consistent statement is inadmissible hearsay pursuant to Illinois Rule of Evidence 613(c) (eff. Oct. 15, 2015), with certain exceptions, to wit:

"Except for a hearsay statement otherwise admissible under evidence rules, a prior statement that is consistent with the declarant-witness's testimony is admissible, for rehabilitation purposes only and not substantively as a hearsay exception or exclusion, when the declarant testifies at the trial or hearing and is available to the opposing party for examination concerning the statement, and the statement is offered to rebut an express or implied charge that:

(i) the witness acted from an improper influence or motive to testify falsely, if that influence or motive did not exist when the statement was made; or

(ii) the witness's testimony was recently fabricated, if the statement was made before the alleged fabrication occurred." Ill. R. Evid. 613(c)(eff. Oct. 15, 2015).

¶ 40    Rule 613(c) is consistent with the long-standing common law rule that "statements made prior to trial for the purpose of corroborating trial testimony are inadmissible." *People v. Cuadrado*, 214 Ill. 2d 79, 90 (2005). As well, the exception for admission has applied "when it is suggested that the witness had recently fabricated the testimony or had a motive to testify falsely, and the prior statement was made before the motive to fabricate arose." *Id.* See also *People v. Emerson*, 97 Ill. 2d 487, 501 (1983).

¶ 41    Defendant pursued a self-defense theory at trial, admitting he shot Mitchell, but proffering that he did not intend to kill Mitchell. Defendant testified in support of his theory. On cross-examination the State used the word "today" several times while questioning defendant. Defendant argues the State in so doing implied that defendant fabricated the self-defense for trial.

Based on this implied fabrication, defendant contended at trial, as he does now, that the circuit court should have granted defendant's motion to admit a recorded call with defendant's wife wherein defendant admits he shot Mitchell but states he did not intend to kill Mitchell. Defendant also proffers the court confused the two prongs of the rule, incorrectly applying the first relating to improper motive.

¶ 42    Notably, the record is not as clear as we would like it to be. During argument before the circuit court, defendant did not identify which of the subsections of Rule 613(c) he believed applied, though he referenced Rule 613(c) generally more than once. Both defendant and the court during the colloquy blended the considerations under the subsections, often referencing them in one sentence, but without specifying that they spoke of two different standards. At times both the court and defendant appeared to speak of one or the other subsection, but only by the language used and not by number.

¶ 43    During argument on defendant's motion to admit his prior consistent statement, the circuit court queried defense counsel about what the improper motive defendant alleged was, and when the purported influence arose. Defendant identified in response the nature of the cross-examination, and specifically the use of "today."

¶ 44    Ultimately, the circuit court ruled based on Rule 613(c)(i), noting the statement occurred after the motive arose. We cannot say the court abused its discretion. The court determined defendant had the same motive to profess he did not intend to cause Mitchell's death at the time of the jail call, given that defendant was detained pending his murder trial, that he did at the time of trial. Reasonable people could agree with such conclusion, and it is not arbitrary or illogical. As in *Emerson*, "the motive for testifying falsely existed prior to the time" when the statement was made at the jail. *Emerson*, 97 Ill. 2d at 501.

- 10 -

¶ 45       The circuit court therefore did not commit an abuse of discretion when it denied defendant's motion to admit the recording of the jail call with his wife.

¶ 46             B. The Circuit Court Properly Admitted Defendant's Prior Conviction

¶ 47       The defendant contends the circuit court should not have admitted his prior felony conviction for aggravated battery. Defendant admits his release from incarceration was within 10 years from the date of the offense herein. Defendant asserts the admission into evidence of this conviction was highly prejudicial and had no probative value.

¶ 48       We review the admission of a prior felony conviction for an abuse of discretion. *People v. Burlington*, 2018 IL App (4th) 150642, ¶ 36. The definition we provide above of what constitutes such an abuse applies equally here.

¶ 49       As discussed in *Burlington*, our supreme court has provided a three-prong analysis to weigh the admission of a prior conviction to impeach the credibility of a witness. *Id.* As defendant does not contest the first two requirements for admission, that the prior offense carried a potential penalty in excess of one year and that less than 10 years have elapsed since the release from confinement, only the last factor merits discussion herein. This third factor directs the circuit court to weigh the probative value of the prior conviction against the potential prejudice flowing from the admission of the prior conviction. *Id.*

¶ 50       The circuit court is to consider while performing the balancing test required by the third prong "the nature of the prior conviction, the nearness or remoteness of that crime to the present charge, the subsequent career of the person, the length of the witness'[s] criminal record, and whether the crime was similar to the one charged. [Citation.]" (Internal quotation marks omitted.) *Id.*

¶ 51    Our supreme court has directly addressed the admissibility for impeachment purposes, of a testifying defendant asserting self-defense, of a prior aggravated battery conviction in a prosecution for murder. See, *e.g.*, *People v. Williams*, 173 Ill. 2d 48 (1996). In *Williams*, as herein, the defendant argued his aggravated battery conviction had no bearing on defendant's credibility, but was rather prejudicial since it suggested a propensity for violence. *Williams*, 173 Ill. 2d at 80-81. After reviewing the well-established precedent, the supreme court noted it had previously "emphasized the importance of conducting the balancing test of probative value versus unfair prejudice before admitting prior convictions for impeachment purposes. [Citation.]" *Id.* at 81-82. Of particular concern to the supreme court was the "indiscriminate admission" of prior felonies for impeachment without regard to the balancing test, as well as admission for impeachment to demonstrate a tendency to act in a violent manner. *Id.* at 82. The supreme court therein explicitly reaffirmed that the balancing test should be employed. *Id.* at 83.

¶ 52    As is the case here, the *Williams* supreme court noted the transcript demonstrated the circuit court was aware of the factors the court should consider. *Id.* Unlike *Williams*, the circuit court articulated the balancing test considerations. Given that, like *Williams*, "there is no reason to suppose that he disregarded the familiar, well-established *Montgomery* standard in determining that the impeachment was proper." *Id.*

¶ 53    In *Burlington*, we addressed the propensity issue in matters where a defendant's testimony constitutes the core of his defense. When a defendant testifies, prior convictions are "crucial in measuring the defendant's credibility. [Citation.]" *Burlington*, 2018 IL App (4th) 150642, ¶ 38. We compared the facts there to those in *People v. Atkinson*, 186 Ill. 2d 450 (1999). In both cases, the circuit courts properly admitted prior burglary convictions for impeachment purposes in burglary prosecutions. *Burlington*, 2018 IL App (4th) 150642, ¶¶ 38-40. Like these,

the circuit court herein recognized defendant's testimony would be integral to his defense, and therefore defendant's credibility a central issue. As well like *Atkinson* and *Burlington*, the court instructed the jury that the prior conviction should only be considered for credibility and not as evidence of defendant's guilt as to murder.

¶ 54 For the foregoing reasons, we do not find the circuit court abused its discretion by admitting defendant's prior aggravated battery conviction.

¶ 55 C. The Admission of Mitchell's Identifications of Defendant Was Proper

¶ 56 The circuit court admitted two police officer body camera recordings in which Mitchell identified defendant as the one who shot him. One recording was made in an ambulance on the way to the hospital, and the other while Mitchell was undergoing treatment in the emergency room. The court admitted these as dying declarations and excited utterances. As noted, we review evidentiary rulings for an abuse of discretion. *Appelt*, 2013 IL App (4th) 120394, ¶ 85.

¶ 57 Relevant to the discussions of the identifications by the victim is that three witnesses testified at trial that defendant shot Mitchell, which was corroborated by testimony relating to review of the surveillance video. Further, given defendant's theory was self-defense, and consistent with that, defendant admitted he shot Mitchell. In short, the evidence against defendant is strong, particularly the evidence that identifies defendant as the shooter.

¶ 58 1. *Dying Declarations*

¶ 59 The question of what to infer from someone's conduct or statements is a question of fact, on which we defer to the circuit court unless the inferences are against the manifest weight of the evidence. *People v. Jenkins*, 2013 IL App (4th) 120628, ¶ 19. Such determinations are "against the manifest weight of the evidence only if the evidence clearly and indisputably calls for the opposite factual determination. [Citation.]" *Id.* at 20.

¶ 60        Illinois Rule of Evidence 802 (eff. Jan. 1, 2011) provides that hearsay is generally not admissible absent exceptions provided for by rule or statute. Hearsay is a statement made outside of the hearing in question, offered to prove the truth of the matter asserted. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Thus, Mitchell's statements offered to prove the identity of defendant as the one who shot Mitchell are hearsay, given he did not make the statements at trial. The statements would not be admissible absent an exception.

¶ 61        One of the exceptions to the hearsay rule invoked by the State and circuit court supporting the admission of Mitchell's out of court statements is the dying declaration exception as follows:

> "(2) Statement Under Belief of Impending Death. In a prosecution for homicide, a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." Ill. R. Evid. 804 (b)(2) (eff. Jan 1, 2011).

¶ 62        The only issue defendant raises concerning the admission of the statements as dying declarations is whether Mitchell believed his death was imminent.

¶ 63        In *Jenkins* we discussed several circumstances where both the circuit and appellate courts determined statements were admissible dying declarations. In one of those, the decedent identified the shooter at the crime scene, minutes after having been shot. *Jenkins*, 2013 IL App (4th) 120628, ¶ 26. In another, the decedent had just arrived in the emergency room and, while being treated, repeatedly asked a nurse to tell his mother he had really tried and loved her. *Id.* (citing *People v. Graham*, 392 Ill. App. 3d 1001, 1006-07 (2009)).

¶ 64        Circumstantial evidence, as well as a victim's statements, can also demonstrate the decedent's belief death is imminent. *Graham*, 392 Ill. App. 3d at 1006. Therein, the victim

- 14 -

complained he was cold to medical personnel, was losing consciousness and copious amounts of blood, and his blood pressure was dangerously low. *Id.* Additionally, approximately six treaters were working on the victim, he knew he had been shot, and he made the statements noted above. *Id.* at 1006-07. The victim's statement was thus properly admitted as a dying declaration. *Id.* at 1007.

¶ 65        In another decision we explored in *Jenkins*, the victim complained he could not breathe, knew he had been shot, was bleeding, and was experiencing such pain he wanted no one to touch him. *People v. Walker*, 262 Ill. App. 3d 796, 801 (1994). The finding this victim's statements was a dying declaration was proper and not against the manifest weight of the evidence. *Id.*

¶ 66        As to the ambulance statement, Mitchell repeatedly said he could not breath, and was pulling off his mask presumably so he could. Mitchell knew he had been shot, as he identified defendant as the one who shot him. Mitchell was losing enormous amounts of blood through his wounds, and was being treated frantically by several people. The video supports Mitchell was having trouble breathing, and that one of the providers advised Mitchell did not have sufficient oxygen in his blood.

¶ 67        As for Mitchell's identification of defendant in the hospital, Mitchell was continuing to experience trouble breathing, and asked several times to be sedated. One treater noted Mitchell was losing copious amounts of blood. From the emergency room, Mitchell was taken to surgery which concluded with Mitchell's death.

¶ 68        The circumstances surrounding Mitchell's statements demonstrate Mitchell thought his death was imminent. The evidence does not clearly or indisputably call for another conclusion. The circuit court's finding Mitchell's statements were dying declarations is not against

the manifest weight of the evidence. The court's admission of the statements therefore was not an abuse of discretion.

¶ 69                                   2. *Mitchell's Statements as Excited Utterances*

¶ 70          We review rulings on admissibility relative to the hearsay rule and its exceptions for an abuse of discretion. *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 33.

¶ 71          Illinois Rule of Evidence 803 (eff. Sept. 18, 2018) provides for certain exceptions to the general hearsay rule. One addresses excited utterances:

> "(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ill. R. Evid. 803(2) (eff. Sept. 18, 2018).

The excited utterance exception is also referred to as the spontaneous declaration exception. *Kinnerson*, 2020 IL App (4th) 170650, ¶ 30.

¶ 72          To admit a statement pursuant to such exception, "there must be an occurrence sufficiently startling to produce a spontaneous and unreflecting statement, there must be an absence of time for the declarant to fabricate the statement, and the statement must relate to the circumstances of the occurrence. [Citation.]" *People v. Sutton*, 233 Ill. 2d 89, 107 (2009). The court is to analyze the totality of the circumstances, "including time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest." *Id.*

¶ 73          Of note herein, the period of acceptable time between the triggering event and the statement varies widely. *Id.* The consideration that is critical as to timing is whether the excitement of the generating event predominated at the time of the statement. *Id.* at 107-08.

¶ 74 Also relevant to our discussion herein is that both statements volunteered and those made in response to questions can be admissible pursuant to this exception. *People v. Williams*, 193 Ill. 2d 306, 353 (2000).

¶ 75 In *Sutton*, the victim's statements made in the ambulance, more than 20 minutes after he had been shot, were excited utterances. *Sutton*, 233 Ill. 2d at 109. Medical personnel were cleaning the blood off of the victim, giving him oxygen, and otherwise attending to him. *Id.* The victim was highly emotional and had to take off his oxygen mask to talk, to answer questions posed by a police officer. *Id.* The totality of the circumstances supported admission by the trial court pursuant to the spontaneous declaration exception. *Id.*

¶ 76 The circuit court properly admitted statements made during a 911 call as excited utterances in *Kinnerson*. The defendant therein argued the victim was safe by the time of the 911 call, after having been beaten and injured in her home. *Kinnerson*, 2020 IL App (4th) 170650, ¶ 34-35.

¶ 77 Defendant claims the circuit court should not have admitted Mitchell's identification of defendant because the first was in response to a question, Mitchell was safe from further harm in the ambulance and hospital, and the event was over. That the first was in response to a question does not destroy the spontaneity. Mitchell had been shot, was bleeding profusely, and was experiencing difficulty breathing. He was being attended to by multiple providers, and seeking to be sedated. The totality of the circumstances evidence Mitchell made the statements admitted by the court while the trauma of the shooting predominated. We cannot say the court abused its discretion by admitting Mitchell's statements as excited utterances.

¶ 78 III. CONCLUSION

¶ 79 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 80          Affirmed.